# CHARLESTON.

STATE ex rel S. J. DILLON et al. v. W. E. NEAL, MAYOR et als.

(No. 6103)

Submitted September 27, 1927.   Decided October 4, 1927.

1.  MUNICIPAL CORPORATIONS—*Mayor of Huntington May Refuse to Consent to Employment of Additional Regular Policemen (Acts 1921, c. 11 § 18, as amended and reenacted by Act April 7, 1927).*

    Under Sec. 18, Chap. 11, Acts 1921 municipal charters, as amended and re-enacted by act of the legislature passed April 7th, 1927, the mayor of the city of Huntington has discretion to refuse to consent to the employment of additional regular policemen for said city.   (p. 261.)

    (Municipal Corporations, 43 C. J. § 1321 [Anno].)

2.  SAME—*Mayor's Refusal to Consent to Employment of Additional Regular Policemen, Based on Lack of Necessity, Held Not Abuse of Discretion (Acts 1921, c. 11, § 18, as Amended and Re-enacted by Act April 7, 1927).*

    Where such refusal to consent to the employment of additional regular policemen, appointed to serve as such by the board of commissioners, is based on the lack of necessity for additional regular policemen for the preservation and good order in the city, and no necessity for their appointment has been shown, the discretion of the mayor has not been abused. (p. 266.)

    (Municipal Corporations, 43 C. J. § 1321 [Anno].)

    (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Original proceeding by the State, on the relation of S. J. Dillon and another, for mandamus to be directed to W. E. Neal, Mayor of the City of Huntington, and others.

*Writ denied.*

*James H. Strickling*, for relators.
*Scott, Graham & Wiswell*, for respondents.

LIVELY, JUDGE:

Upon the petition of S. J. Dillon and J. W. Simms, an alternative writ of mandamus was issued against W. E. Neal,

Mayor of the city of Huntington, and Homer Yeich and James Murphy, commissioners of that city, commanding them to employ relators as policemen and assign them duties as such, and place them on the payroll, or show cause why the same should not be done.

The mayor and the two commissioners have made separate returns. The return of the commissioners is in support of the petition of the relators and the alternative writ, and asks that the peremptory writ be issued against the mayor requiring him, through the chief of police, to assign police duties to the relators. The return of the mayor, among other things hereinafter noted, avers that the attempted employment of relators as policemen, set out in their petition and the return of the commissioners thereto was invalid, and that it was not done by and with the consent of the mayor as required by the charter of the city.

The issuance of the peremptory writ depends upon a proper construction of the provisions of the charter relating to the appointment of policemen.

It appears that when Mayor Neal was inducted into office in June, 1925, there were 67 men on the police force, including the chief of police, jailer and electrician, and of these, 27 were democrats and 40 republicans; that in July, 1927, the total number of 67 had not changed, but that there were at that time 35 republicans and 32 democrats employed as officers and policemen; that within the time between July, 1925, and July, 1927, 14 democrats had been added to the police force to fill vacancies caused by resignations and removals. The appointment of these democrat policemen was to carry out the spirit of the charter as amended in April, 1927, which provided that until such time as the police department should be represented by an equal number of members from the two dominant political parties as near as possible, all appointments thereto should be made from the party which then had the minority in the police force. It appears that out of a membership of 67, the nearest equal representation will be 35 to one party and 32 to the other party. It appears, however, that three members of the force, namely: Beheler, Stevers and Sprouse had resigned many months previous to

August, 1927, one voluntarily and two upon request, and their resignations had been accepted; but upon their promise to remove the causes which prompted their respective resignations these three persons were appointed by the mayor as special policemen to continue as such as long as their conduct remained satisfactory to the mayor.  On August 1st, 1927, the board of commissioners, composed of Yeich, Murphy and the mayor, entered an order directing the auditor not to. issue any pay vouchers to the three special policemen, the said order being entered against the protest and the vote of the mayor.  Whether these special policemen are yet serving the city, does not appear.  They were notified of the action taken.  Having entered the order directing the auditor to not issue vouchers to the special policemen named, the two commissioners appointed the relators Dillon and Simms as policemen over the objection of the mayor, who refused to consent to the employment.  The mayor then notified the chief of police that the attempted employment of the relators was not legal, and requested him to refrain from assigning them to duty.  Thereupon, relators applied for and obtained from a judge of this court the alternative writ.  It is asserted by relators that their appointment is legal, and that the duty of the mayor to have them assigned to service with consequent pay is merely ministerial and that mandamus will lie.

Under the charter the corporate powers are vested in and exercised by the board of commissioners and the mayor.  The government is divided into three departments: (1) department of fire, police, law and public safety; (2) department of finances, taxation and charity; ˙(3) department of streets, sewers, public utilities, wharf and public buildings.  The mayor is the directing head of the department of fire, police, law and public safety.  He is the chief executive officer, and among other things it is his duty to see ''that peace and good order of the city are preserved, and that the persons and properties therein are protected.''  The commissioners are each made heads of the other two departments of government, respectively.  Under the charter of 1921 the election of all appointive officers of the city was vested in the board of commissioners, except the auditor who was appointed by

the "Citizens Board". For some reason the appointments of the various appointive officers were unsatisfactory and by the act of April 7th, 1927, the Legislature amended that provision and directed that the board of commissioners should make the various appointments (not including the auditor), including appointment to those offices which the board of commissioners might from time to time create; and providing that "no officers or agents shall be created or employed in either the police or fire departments, except it be done by and with the consent of the mayor." But the appointment of the chief of police, chief of fire department, police judge and jailer was given to the mayor exclusively, to hold their positions at the will of the mayor, and all other officers of the police department held their positions or standing at the will of the "civil service board". The persons holding positions in the police department (except chief of police, police judge and jailer) are under civil service, and in all cases where charges are preferred against them they may appeal to the civil service board for determination. If there be no specific provision in an act for the removal of an appointive officer without a term, then the power to remove is lodged in the persons or the board making the appointment. 22 R. C. L., page 562, Sec. 266. Whether Behler, Stevers and Sprouse, special policemen, were legally removed as such by the commissioners Yeich and Murphy, is not raised in this proceeding.

We now turn to the provision for the appointment of regular policemen. They are to be selected from applicants who have passed the civil service examination held by the civil service board, and who have received an average grade of 60% or more, preference being given to the applicants who received the highest grade, and whose grades are the oldest. Whether the appointment is original or to fill a vacancy, the mayor has the first selection from his own party, and his vote shall elect. The two commissioners when both are elected from the opposite political party (as in this case) shall have the second selection, and their two votes shall elect; then follows the provision herein before referred to, namely, until such time as the two dominant par-

ties are represented by an equal number of members, all appointments shall be made from the party then in the minority; and then such representation shall be maintained as nearly as possible. This method of selection is contained in the 1927 act amending the charter of 1921, under which (1921 act) all appointments to the police department were made by the chief of that department, by and with the consent of the board of commissioners.

Counsel agree that the meaning of the amendment of the charter as contained in the act of 1927, Sec. 18, providing that no officers or agents shall be created or employed in either the police or fire departments except it be done by and with the consent of the mayor is of vital importance. Counsel for relator contends that this provision refers to new officers and agents which might be created in these departments and has no reference to the appointment of policemen; while counsel for the mayor says that the act on its face and in plain intendment relates to and applies to the employment of all regular policemen. The mayor so construed it. Under the former act the policemen were appointed by the chief, "by and with the consent of the board of commissioners" from those who had passed the civil service examination with a grade above 60%. The reason for the change is uncertain but it is reasonably clear that the consent of the mayor, a member of the board of commissioners, was not changed. The language of the new act is that no officers or agents of the police department shall be created or employed except it be done by and with the consent of the mayor. Reasons why the chief of police should be curbed in employment of policemen are abundant; and the same reasons apply to the employment of policemen by the commissioners. It must be kept in mind that the mayor is the chief executive officer charged with the preservation of peace and protection of property and is *ex officio* the directing head of the police department. Who is in a better position to know the number of policemen necessary for the proper policing of the city than the mayor? When he says he has a sufficient number of policemen who is to gainsay? Public disturbances such as riots and unlawful assemblies might call for a sudden enlargement of the police force. The mayor

would necessarily have power to enlarge it. The general purpose of the act with reference to the peace and good order of the city is that the mayor should be responsible, and the parts of the act with reference thereto should be construed to give him the power to accomplish this plain purpose. The true meaning of any clause or provision is that which best accords with the subject and general purpose of the act and every part. Lewis' Sutherland Stat. Construc. Vol. 2 (2nd Ed.), Sec. 348.

. But it is argued that if the employment of policemen is to be made with the consent of the mayor, the other part of the statute set out giving the two commissioners the power to elect, will be nullified. That does not necessarily follow. Both must stand if not absolutely repugnant. Whenever policemen are employed they must be selected from the applicants who have passed the civil service examination with a grade of over 60%, and from that political party which has a minority representation. The mayor cannot arbitrarily or capriciously refuse to give his consent in that case. The mayor's return supplemented by his affidavit is, among other things, that whenever there has been an employment of policemen since his induction into office there has been a successful endeavor to equalize the total appointments by selection of adherents of the two dominant political parties, with the result that 14 democrats have been selected and placed on the force, and no republicans, making the present representation stand at 32 for the democrats and 35 for the republicans, including among the republicans the chief of police, jailer and electrician. The return and affidavit further says that he has endeavored to reduce the costs of policing the city in good faith and he refused to approve the employment of relators because he believed that their services were not necessary, and further that their appointment was a discrimination against others of the same political faith who had passed the civil service examination and were eligible. The relators have not attempted to prove that their services, or the services of any additional policemen were necessary for the preservation of peace and good order. The statute clearly says that no officers or agents shall be created

or employed in the police department by the board of commissioners, except it be done by and with the consent of the mayor. The mayor has not consented to relators' employment because he deemed their services not necessary for the proper policing of the city. Had he consented to the employment of additional policemen, the charge that he had acted arbitrarily and capriciously in refusing to approve the appointment of relators might be of some force.

We think the mayor, *ex officio* the directing head of the department of fire, police, law and public safety, has discretion to decide the number of policemen necessary for the public welfare; and that his refusal to consent to the employment of relators as additional policemen was not an abuse of his discretion. The rule is well established that mandamus will not lie to control discretion unless the discretion has been arbitrarily, capriciously, wantonly or fraudulently exercised. *State ex rel Noyes* v. *Layne*, 89 W. Va. 744; *Swearinger* v. *Bond, Auditor*, 96 W. Va. 193.

*Writ denied.*