# CHARLESTON.

STATE *ex rel.* ROBERT GARBUTT *v.* IRVIN CHARNOCK, *Clerk, etc. et al.*

(No. 6179)

Submitted January 11, 1928.   Decided January 17, 1928.

1.   BAIL—*That Residence and Property of Proposed Bail Sureties Are in Another County is no Reason for Rejecting Them (Const. art. 3, § 5; Code, c. 156).*

   The fact that sureties, tendered as such for bail in a criminal case, do not reside in the county where the prosecu-

tion is conducted and the property owned by them is in the county of their residence, is not a substantial reason for rejecting them on the recognizance, if they be otherwise qualified.    (p. 11.)

(Bail, 6 C. J. § 262.)

2.    SAME—*That Realty of Sureties Offered as Bail is Subject to Liens Does Not Justify Their Rejection, Where Their Equities Financially Qualify Them (Const. art. 3, § 5; Code, c. 156).*

Nor does the fact that the real property of such sureties is encumbered by liens justify their rejection on the recognizance, where it clearly appears and is not denied that their equities in the properties make them amply financially qualified to discharge the obligation.    (p. 13.)

(Bail, 6 C. J. § 262.)

3.    MANDAMUS—*Mandamus Lies to Compel Acceptance of Sureties on Bail Bond Qualified by Equities in Realty.*

Where the court has granted bail to a prisoner and fixed the amount of the obligation and directed the recognizance or bond to be taken or executed before the clerk of the court, and it appears that the clerk has refused to accept sureties tendered on the sole ground that liens exist against the real estate owned by the sureties which admittedly do not render them financially disqualified to discharge the penal sum fixed by the court, mandamus will lie to compel their acceptance as such sureties.    (p. 14.)

(Mandamus, 38 C. J. § 123 [Anno].)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Original proceeding by the State, on the relation of Robert Garbutt, for mandamus to be directed to Irvin Charnock, Clerk of the Circuit Court of Brooke County.

*Writ awarded.*

*Jay T. McCamic*, for relator.
*R. L. Ramsay*, for respondents.

LIVELY, JUDGE:

The object of this mandamus proceeding is to compel respondent Charnock, clerk of the circuit court of Brooke county, to accept James Russell and George Steers as sureties on a recognizance, tendered him by relator in accordance with

an order of the circuit court granting relator bail, fixing the amount thereof at $1500.00, and directing that the recognizance be executed before the court, or before the clerk of the circuit court.

Relator, Robert Garbutt, was indicted at the November, 1927, term of court for the crime of attempt to commit rape; and at that term appeared in person and by counsel and demurred to the indictment. The demurrer was overruled, and an order entered permitting Garbutt to give bail in the sum of $1500.00, either before the court, or before the clerk of the circuit court, respondent Charnock. On November 14, 1927, relator appeared before the clerk and offered James Russell and George Steers, residents of Ohio county as sureties. Russell was the owner in fee of a lot of land in Ohio county assessed for taxes at $1500.00, with an encumbrance thereon of $1400.00; and Steers showed his ownership of a lot of land in Ohio county assessed for taxes at $4100.00, with an encumbrance thereon of $1500.00; and another vacant lot valued at $750.00 without encumbrance. He swears that his personal property is of greater value than $1500.00. There appears to have been no objection to the form, or condition of the recognizance as required by the clerk. The clerk refused to accept the sureties for the reason then given, that the prosecuting attorney had directed him to accept no surety on such bonds whose real estate was encumbered. On November 19, 1927, the objection of the prosecuting attorney to accepting the sureties tendered, namely, that there were encumbrances against the real estate owned by them as above set out, was submitted to the court, and the judge said he would not overrule the objection of the prosecuting attorney as that officer was charged with the administration of such matters and that he would take the views of the prosecuting attorney as to the sufficiency of a bond if he raised any question about it. On December 12, 1917, this alternative writ was issued against the clerk and prosecuting attorney and served on December 17th. It appears from an exhibit filed with the return that on January 4, 1928, Garbutt, relator, was brought into court, his counsel, J. T. McCamic, being absent, and without notice, an attorney was appointed to represent him, where-

upon, the prosecuting attorney moved the court to enter, and
the court did enter a *nunc pro tunc* order as of November 9,
1927, which recited that counsel for plaintiff had offered Rus-
sell and Steers as sureties on the recognizance of the accused,
and it was then decided by the court that the offered sureties
were insufficient and remanded the prisoner to jail until a
sufficient bond be given.

The return of the clerk does not deny the allegation in the
petition supported by affidavits that the sureties tendered are
worth over and above their liabilities the sum of $8,000.00,
but bases his refusal to take recognizance on the ground that
he does not have the consent of the judge of the court and
prosecuting attorney, and exhibits the *nunc pro tunc* order
in justification of his refusal. By so doing the clerk has
adopted the objection of the prosecuting attorney, approved
by the judge, which is that sureties tendered must own real
estate clear of encumbrances. Is the refusal based on a sub-
stantial reason, or is that reason unsound, flimsy, arbitrary
and capricious? The record clearly raises this issue.

While the petition makes the prosecuting attorney a party
respondent, the prayer is that an alternative writ be awarded
relator against the clerk alone, commanding him to accept the
sureties on the recognizance. There appears to be no relief
sought against the prosecuting attorney. The return of the
prosecuting attorney is practically the same as that of the
clerk.

Both respondents interpose a motion to quash the petition
and writ on the grounds, (1) that the sureties tendered live
in Ohio county and not in Brooke county, and their real estate
is also in Ohio county, and hence no suit or action could be
maintained in Brooke county, and the state would be required
to go into the former county to enforce the obligation, in case
the recognizance was forfeited; and (2) that the granting or
refusing bail is judicial in its nature and cannot be reviewed
by mandamus. The object of bail in criminal cases is to
secure the appearance of the accused before the court at a
time designated for the purposes of public justice. At com-
mon law, bail was allowed in all cases in the discretion of

the court. The policy of our government is to admit to bail persons charged with crime. Section 5, Article 3, Constitution, and Chap. 156, Code. *Habeas corpus* may be issued for the sole purpose of obtaining bail in a felony case. *Ex parte Hill,* 51 W. Va. 536. Whether bail be granted lies within the sound discretion of the court. The objection interposed by the motion to quash, that the sureties tendered do not live in Brooke county and the real estate owned by them lies in another county is untenable. The inconvenience, if any, to which the state would be subject in case of forfeiture of the bail, does not militate against the right to bail nor the pecuniary qualifications of the sureties offered. On the recognizance required, the principal and sureties acknowledged themselves to be bound unto the state in the sum of $1500.00, to be respectively made and levied upon their goods and chattels, lands and tenements, upon default of the condition that the principal will appear at the time fixed and not depart without leave of the court. By this obligation the parties thereto submit themselves to the jurisdiction of the court; and upon failure to perform the condition a *scire facias* may be issued to be served in any county in the State where the sureties may be found. There is nothing in the statute or at common law which requires that the surety shall live in the county where the bail is given, or that he shall own property therein. 6 C. J. Sec. 262, p. 1011. Under such holding a surety company of unquestionable financial strength authorized to do business in the State and to be surety on such bonds could not be accepted because not a resident of the county, or not the owner of property therein. On the other point interposed by the motion to quash, namely, that the granting or refusing of bail is judicial and cannot be controlled by mandamus. We are in accord (possibly *habeas corpus* would be proper remedy), but the judicial action involved is in the question whether bail should be granted or refused. Before bail is granted there must be an action by the court judicial in its nature that the accused is entitled to bail under the crime charged, connected with all the facts and circumstances. But after the right to bail has been judicially determined and the amount fixed, (which must not be

excessive under the constitution), the determination of the
sufficiency of the sureties and taking of the acknowledgment
are ministerial and not judicial. 3 R. C. L. sec. 23, p. 22.
The court by its order had granted bail and fixed the amount.
The taking of the recognizance by the clerk was purely minis-
terial. The basis on which the sureties were refused was
not because they and their properties were claimed to be out-
side the jurisdiction of the court; but because their real estate
was encumbered, and this brings us to the issue developed by
the alternative writ and return thereto.

Were the sureties tendered pecuniarily able to fulfill the
obligation? There is no question of their fitness otherwise.
It is said that in determining their ability to respond to the
penal amount of the obligation, the clerk has discretion which
cannot be controlled by mandamus. It is quite true that the
clerk exercises discretion in determining whether the sureties
tendered are pecuniarily able to perform the obligation if
the condition be not performed according to the tenor thereof,
but that discretion is not arbitrary and absolute; it must be
reasonably and soundly exercised, otherwise a clerk could
always refuse to take unquestioned sureties, and successfully
defend on the ground that he was exercising discretion which
could not be questioned. The result would be as pernicious
as where excessive and impossible bail was required. The
meaning of discretion generally is sound discretion. "It must
be governed by rule; it must not be arbitrary, vague and
fanciful, but legal and regular." *Rex* v. *Wilkes,* 2 Burr. R.
25. See *Rose* v. *Brown,* 11 W. Va. 142. But as we view the
return the non-acceptance of the sureties is not based on lack
of their financial ability to perform, for their equities in the
properties owned by them are far in excess of the penal sum
of the recognizance, (an averment supported by affidavits and
not attempted to be denied); but because there are liens which
would be first in priority in case of sale by the state in satis-
faction of the recognizance; not that the penal sum could not
be realized, but because the liens would have precedence in
case of sale by the state.

This is not a sound reason on which rejection of the sureties
can be based. It is fanciful and arbitrary. Fancied conven-

ience is made to defeat a legal right to liberty. Under such a theory a surety owning property worth a million dollars would be refused because of a lien thereon however small and inconsequential.

Under the familiar principle that discretion in the performance of a ministerial duty, where its exercise has been unsoundly and capriciously exercised will be controlled by mandamus, we have concluded to direct the peremptory writ as against the clerk, and without costs. See *State ex rel. Hoffman* v. *Town of Clendenin*, 92 W. Va. 618, 29 A. L. R. 37; *State ex rel. Noyes* v. *Lane, Clerk, et al.*, 89 W. Va. 744.

*Writ awarded.*