STATE *ex rel.* PRINTING-LITHO, INC.,
A WEST VIRGINIA CORP.

*v.*

CURTIS S. WILSON, DIRECTOR OF PURCHASES
OF STATE OF WEST VIRGINIA

(No. 12188)

Submitted September 12, 1962.   Decided November 20, 1962.

HAYMOND, CALHOUN, JUDGES, dissenting.

*William L. Jacobs,* for relator.

*C. Donald Robertson,* Attorney General, *Andrew J. Goodwin,* Assistant Attorney General, for respondent.

BROWNING, JUDGE:

In this original proceeding in mandamus, relator, Printing-Litho, Inc., seeks to require the respondent, Curtis S. Wilson, Director of Purchases of the State of West Virginia, to honor the low bid submitted by the relator with regard to certain miscellaneous printing and binding for the State of West Virginia for the years 1962-1964, hereinafter designated as "Contract No. 3".

The petition identifies the parties and alleges: the solicitation by the respondent, pursuant to statute, of sealed bids for printing "Contract No. 3"; the timely submission by the relator, with bond in the amount of $50,000.00, of a bid of $62,049.50, which bid was the lowest of the five firms competing for the work, the next lowest bid being $113,316.20; that relator is the lowest responsible bidder as defined by statute, has under lease adequate facilities to fulfill all requirements and the United States Government is presently employing such facilities on similar contracts for quantities far in excess of those required by the state; the President and General Manager of relator have had more than fifteen years experience with the same printing contract in previous years and are thoroughly familiar with the quality, quantity and service required by the state; the relator is ready to give a satisfactory surety bond for the full amount of the bid guaranteeing faithful performance and compliance with all terms, conditions and requirements of said contract; and, despite the fact that relator is the lowest responsible bidder, respondent has rejected relator's bid.

A rule to show cause why the writ should not issue as prayed for was issued by this Court on August 21, 1962, returnable September 5, 1962, at which time respondent appeared and answered, admitting all of the factual allegations of the petition but averring that relator "does not have the qualifications necessary to perform the work required under

its bid and was refused the contract because its financial statements do not show that it is a responsible bidder and able to perform the contract as set out by the State of West Virginia."

Discovery depositions of Mr. C. F. Boyd, President of Printing-Litho, Inc., and Mr. F. R. Clark, were taken by agreement of counsel.

Mr. Boyd testified, in substance, that: Printing-Litho, Inc., was incorporated on May 24, 1962, with an authorized capitalization of $2,000,000; the present operating capital is approximately $4,000 of which he has contributed $1,800; the sale of stock to the public has not yet been authorized by the Securities Commission of the State; Printing-Litho, Inc., has leased the entire facilities of the former Clark Printing Company of Elkins with an option to purchase at the expiration of the lease, and has obtained oral agreements with two other printing plants, one in Elkins and one in Philippi, 26 miles distant, the owners of which plants are shareholders of Printing-Litho, Inc., to use their facilities; the facilities under lease would be insufficient to perform the contract if the equipment at the other plants in Elkins and Philippi became unavailable, however, an option to purchase for $3,000.00 additional equipment sufficient to perform the contract, has been obtained; both he and the production manager, Mr. Dobreff, have had at least 15 years experience in the performance of state contracts similar to "Contract No. 3"; Printing-Litho, Inc., employs 6 production workers, formerly with Clark Printing Company, and, though the plant is not unionized, the wage scale paid to these employees is at least equal to the prevailing wage in the area; creditors of Clark Printing Company have filed suit to repossess an item of the equipment Printing-Litho, Inc., has under lease; Printing-Litho, Inc., has performed, and is presently performing, similar contract printing work for the United States Government; the difference of $51,-266.70 between the bid of Printing-Litho, Inc., and the next lowest bidder, is largely due to production costs; and, Printing-Litho, Inc., has received assurance from the bonding company which posted the $50,000 "bid" bond that it

is willing to give whatever "performance" bond is required in the execution of the contract. He also stated that Printing-Litho, Inc., did not have at the time of his deposition, $3,000.00 with which to exercise the option for additional equipment.

Mr. Clark, called as a witness for respondent, testified to the effect that: he was formerly engaged in the printing business as Clark Printing Company, however, the great proportion of the assets of said business are privately owned by his wife; neither he nor his wife have any interest in Printing-Litho, Inc., except as lessors and an option to purchase shares of stock within six years; Clark Printing Company has several outstanding judgments against it; three attempts were made to unionize the plant which contributed to Clark Printing's financial difficulties, however, Printing-Litho, Inc., is presently paying "considerably higher wages than I ever intended to, which is greater than the prevailing wages in the area"; Printing-Litho, Inc., is paying as rental. $1,500 a month, which is sufficient to defray the payments on all equipment (five pieces) under conditional sales contracts including that which was the subject of a suit for repossession and, in the event of his default, Printing-Litho, Inc., has an option under the lease to make such payments; and, all other equipment (sixteen pieces) are owned outright by Mrs. Clark.

Chapter 5A, Article 3, of the Code, as amended, after directing the director of purchasing, inter alia, to solicit sealed bids for the purchase of commodities and printing that is estimated to exceed two thousand dollars, provides in Section 14 that:

> "Bids shall be based on standard specifications . . . . All open market orders, purchases based on advertised bid requests, or contracts made by the director or by a state department shall be awarded to the lowest responsible bidder, taking into consideration the qualities of the articles to be supplied, their conformity with specifications, their suitability to the requirements of the state government, and the delivery terms. Any or all bids may be rejected. . . ."

Section 4 of the article commands the director to "adopt and amend rules and regulations to:"

"...

"(6) Prescribe the amount of deposit or bond to be submitted with a bid on contracts and the amount of deposit or bond to be given for the faithful performance of a contract; . . . ."

In the case of *Butler* v. *Printing Commissioners,* 68 W. Va. 493, 70 S. E. 119, 38 LRA (NS) 653, an issue similar to that in the instant proceeding was presented to this Court, the distinction being that in that case the contract had already been awarded to another bidder. The syllabus in that case is as follows:

"1. A *mandamus* will not go to a bidder for state binding to compel the Commissioners of printing to award him the contract for such binding after they have awarded it to another bidder, though the former was the lower bidder, the function of the board of commissioners involving discretion.

"2. Quaere. Is this a suit against the State?"

To answer this *quaere,* this Court has since had many occasions to interpret the provisions of Section 35, Article VI of the Constitution which reads: "The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee." It was held in *Mahone* v. *State Road Commission,* 99 W. Va. 397, 129 S. E. 320, *Hardy* v. *Simpson,* 118 W. Va. 440, 190 S. E. 680, and *Schippa* v. *West Virginia Liquor Control Commission,* 132 W. Va. 51, 53 S. E. 2d 609, 9 ALR 2d 1284, that the immunity of the state in a court of law or equity with the exception therein provided applies as well to the agencies and boards created by the Constitution and by valid acts of the legislature. However, this Court has held that where an agent of the state acts unlawfully he, individually, is not protected by this section of the Constitution. *Downs* v. *Lazzelle,* 102 W. Va. 663, 136 S. E. 195. It has also held that this section does not apply

where the duty involved is purely a ministerial one. In *State* v. *Shawkey,* 80 W. Va. 638, 93 S. E. 759, a writ of mandamus issued against members of the Board of Public Works directing them to perform certain acts which the Court held to be purely ministerial duties. See also *Fidelity, etc., Co.* v. *Shaid,* 103 W. Va. 432, 137 S. E. 878, and cases there cited. Likewise, the Court has held that mandamus will lie to compel the State Road Commissioner in a proper case to institute condemnation proceedings against a landowner after the completion of a public highway. *Taylor* v. *Baltimore & Ohio Railway Co.,* 138 W. Va. 313, 75 S. E. 2d 858.

The principle to be derived from these cases is that an action or suit instituted by a person entitled to the performance of a duty against the official charged with the performance of that duty is not a suit against the state within the prohibition of Section 35, Article VI of the Constitution of this State. *Houston* v. *Ormes,* 252 U. S. 469, 472, 40 S. Ct. 369, 64 L. ed. 667; *Fidelity, etc. Co.* v. *Shaid,* 103 W. Va. 432, 438, 137 S. E. 878. See also *Hamill* v. *Koontz,* 134 W. Va. 439, 59 S. E. 2d 879.

Thus, we are confronted with the primary issue in this case of whether the action of the Director of Purchases, clothed by the Legislature with discretion, is controllable by mandamus.

In the *Butler* case it was said:

". . . Our constitution and fabric of government divide governmental powers into three grand divisions, and prohibit the assumption by those exercising the powers of one of them of the just powers of another. This is a cardinal principle, a distinguished feature of our free government, always to be kept in mind; a great light which is always to be thought of in such cases as the present. The functions of the Commissioners are very important in public administration, and are an essential part of the executive department. The judiciary must be very cautious when it interferes with the functions of the executive department. It was said by able men in an early period of our country's history that the courts were usurpatory of power, and in-

clined to dominate over other branches of government. The courts should not justify this charge. It does seem that the constitution and statute intend and mean to invest the matter before us exclusively with this executive board erected by the Legislature, under the mandate of the Constitution to deal with it. It is executive or political action, not judicially reviewable. It would seem that it was never intended that such matters should in anywise fall under the supervision of the courts, and be the subject of private litigation. If so the public wheels might be impeded. The Legislature might meet and find its supplies for business involved in a law suit. So with the public offices. Where would be the end of delay and confusion? The character of the transaction or business repels that construction of the law. I do not say that under no circumstances can courts affect the action of executive officers where void of discretion, and only ministerial; but I do say that in this matter they can not do so; I do say that where with an executive commission of the character involved in this case there is lodged judgment and discretion, a court cannot control it by *mandamus;* and we hold that this board is vested with discretion in passing on such bids. It is said in Merril on Mandamus, sec. 117, that the writ will go to compel public officers to let contracts to the lowest bidder, but not when vested with discretion. This is only the general rule that it will not go to control discretion. But it is urged upon us that the law says that the contract must be given to the lowest bidder, without any discretion in the printing commission, if he is pecuniarily responsible. This cannot be sustained. In *Douglass* v. *Commonwealth,* 108 Pa. 599, an act directing contracts for supplies to be awarded 'to the lowest responsible bidder,' and it was held that the word 'responsible' does not refer to pecuniary ability only, that the act called for 'the exercise of discretionary powers on the part of the city, and if they act in good faith, though erroneously or indiscreetly, *mandamus* will not lie to compel them to change their decision.' *State* v. *Mc-Grath,* 91 Mo. 386, holds that 'the duties of officers entrusted with the letting of contracts for public works to the lowest responsible bidder are not of a strictly ministerial nature, but involve the exercise of such a degree of official discretion as to place them beyond the control of the courts by *manda-*

*mus.'* It held that *mandamus* should not go to compel the commissioners of public printing to award the contract to one on the ground that he was the lowest bidder. . . ."

This language was tempered in the later case of *Wysong* v. *Walden,* 120 W. Va. 122, 130, 52 S. E. 2d 392, 398, where it is stated: ". . . Generally, the awarding of contracts by a board of education resides in the sound discretion of the board. Courts should hesitate to interfere with that discretion. *Butler* v. *Printing Commissioners,* 68 W. Va. 493, 70 S. E. 119, 38 LRA (NS) 653. Mandamus as a rule will not lie at the hands of an unsuccessful bidder to disturb this discretion. 80 ALR, Note 1382-1398. Where, however, the lowest bidder is responsible and, through fraud or corruption, the bid is rejected, such rejection constitutes a violation of official duties, justifying removal of the officers guilty thereof. . . . we advance the caution that a 'responsible' bidder embraces both financial and moral responsibility."

An adequate discussion of the problems arising in the present situation, and the decided cases, will be found in 34 Am. Jur., Mandamus, § 160; 43 Am. Jur., Public Works and Contracts, §§ 41-45; 80 ALR, Note 1382-1398; 27 ALR (2d) 919-941, and a summarization and analysis of the text and decisions therein would serve no purpose except to unnecessarily extend the length of this opinion. Suffice to say that the better reasoned rule appears to be, and we so hold in the instant proceeding, that while a court ordinarily will not interfere with the action of an officer or board clothed with discretion, it will do so where there is a clear showing of fraud, collusion or palpable abuse of such discretion, and any implication to the contrary in the *Butler* case is expressly disapproved.

We come now to the question of whether the record in the instant case will warrant the intervention of this Court by mandamus. It is extremely regrettable that the Director of Purchases did not testify. Under the circumstances it must be presumed that his testimony would not have supported his theory of the case. *Rohrbaugh* v. *Rohrbaugh,*

136 W. Va. 708, 68 S. E. 2d 361; *Wolfe* v. *Wolfe,* 120 W. Va. 389, 198 S. E. 209; *Union Trust Company* v. *McClellan,* 40 W. Va. 405, 21 S. E. 1025; *Piccolo* v. *Woodford,* 184 Va. 432, 35 S. E. 2d 393. However, even indulging in such presumption, this Court cannot say, upon the record before it, and the facts as stated in the beginning of this opinion will not be repeated here in full, that the respondent has abused his discretion in refusing the bid of relator even though it was much lower than the next bid. The relator was incorporated May 24, 1962, has not had its application approved by the Securities Commission of this state to raise two million dollars as operating capital and the record shows by relator's witnesses that the present operating capital is approximately four thousand dollars. It is admitted that relator does not have the equipment necessary to efficiently perform "Contract No. 3" at its Elkins plant, nor the $3,000 necessary to exercise its option to purchase sufficient equipment. While there is testimony that sufficient equipment in other plants is available for use by relator, there is no contract assuring its availability, nor any showing in the record that such oral agreements are customary or considered binding in the printing industry.

The general rule is that financial responsibility alone is not sufficient to meet the qualifications of "lowest responsible bidder," as provided by our statute and it is not conclusive, therefore, upon the respondent that a bid bond has been given by relator and that it is alleged that a performance bond will be forthcoming if the contract is awarded to it. *Wilmott* v. *State Purchasing Comm.* (Ky.) 54 S. W. 2d 634; *Butler* v. *Darst Printing Commission,* 68 W. Va. 493, 70 S. E. 119, 38 LRA (NS) 653; 86 ALR 131. It is the responsibility of the Director of Purchases of this state to be satisfied, among other considerations, that the printing contract can, and will, be complied with; that the materials required for the different departments of the government be promptly provided; and that the facilities of the printer are such as to insure competent and efficient performance.

There is no allegation in the petition filed herein nor in the evidence even suggesting fraud or corruption on the part

of the respondent in rejecting the bid of the relator. The case of the relator is based solely upon the allegation that the awarding of the contract to it would save the taxpayers a substantial sum of money. All other things being equal it is certain that the writer of this opinion, and the other members of this Court, would agree that the awarding of the contract to the lowest bidder and thus saving money to the taxpayers would be most commendable. However, that is not the final test, and this Court cannot say, as a matter of law, that the Director of Purchases, in rejecting the bid of the relator, so abused his discretion in the premises that his action is subject to control by mandamus.

The writ of mandamus will be refused and the rule heretofore awarded will be discharged.

*Writ refused.*

HAYMOND, JUDGE, dissenting:

In my judgment the petitioner, Printing-Litho, Inc., is entitled to the writ which it seeks in this original mandamus proceeding. In consequence I dissent from the decision of the majority which refused to require the defendant to comply with the mandate of the statute and accept the bid of the petitioner and contract with it as the lowest responsible bidder with respect to certain miscellaneous printing and binding for this State during a two year period from 1962 to 1964.

Notwithstanding the statement in the opinion in *Butler* v. *Printing Commissioners,* 68 W. Va. 493, 70 S. E. 119, 38 L.R.A. (N. S.) 653, that "where with an executive commission of the character involved in this case there is lodged judgment and discretion, a court cannot control it by *mandamus;*" referred to and expressly disapproved by the majority in this proceeding, the principle established by numerous decisions of this Court is that mandamus lies to control the action of an administrative officer or agency in the exercise of discretion where such action is arbitrary, capricious, unsound or wrongful. *State ex rel. Payne* v. *Board of Education of Jefferson County,* 135 W. Va. 349, 63 S. E. 2d 579; *Beverly Grill, Inc.* v. *Crow,* 133 W. Va. 214, 57

S. E. 2d 244; *State ex rel. Garbutt* v. *Charnock,* 105 W. Va. 8, 141 S. E. 403, 56 A.L.R. 1094; *State ex rel. Dillon* v. *Neal,* 104 W. Va. 259, 139 S. E. 757; *State ex rel. Hoffman* v. *Town of Clendenin,* 92 W. Va. 618, 115 S. E. 583, 29 A.L.R. 37; *State ex rel. Noyes* v. *Lane,* 89 W. Va. 744, 110 S. E. 180; *Dillon* v. *Bare and Carter,* 60 W. Va. 483, 56 S. E. 390.

The *Butler* case, cited and relied on by the defendant, does not control the decision in this proceeding. It is not controlling for several reasons. In the first place its broad denial of relief by mandamus is expressly disapproved by the majority as heretofore indicated. Secondly, it is contrary to the above cited cases which hold that arbitrary, capricious, unsound, or wrongful exercise of discretion will be controlled by mandamus. Moreover, the reasoning of the majority in the *Butler* case is completely refuted by these expressions in the dissenting opinion of Judge Poffenbarger in that case: "But discretion in the commissioners, extending to all phases of their work would not necessarily bar the remedy invoked. Officers exercising the discretionary powers cannot act arbitrarily. Reason must govern their action. They cannot say a clearly responsible man is irresponsible, or that a bidder has not complied with conditions, when he obviously has. Neither ignorance, a fanciful, groundless notion as to law, nor fraud will be permitted to bar the writ. The suggestion that only collusion or fraud will do so is too narrow. The authorities go beyond that. Judgment as well as honesty must be put into effect. *Dillon* v. *Bare & Carter,* 60 W. Va. 483; *Glencoe* v. *People,* 78 Ill. 382; *State* v. *School Directors,* 134 Mo. 296; *State* v. *Kellogg,* 95 Wis. 672; *State* v. *Johnson,* 103 Wis. 591; Briggs v. Hawkins, 16 R. I. 83; *Sparrow's Petition,* 138 Pa. St. 116; *Brewing Company's Petition,* 127 Pa. St. 523; *Dental Examiner* v. *People,* 123 Ill. 227. This principle has been enforced on applications for the writ by bidders, entitled to awards. *State* v. *Commissioners,* 39 O. St. 188; *People* v. *Contracting Board,* 46 Barb. 254. In the former case, the commissioners rejected the lowest bid on the theory of irresponsibility of the bidder. The court said: 'We are satisfied from the evidence, after carefully considering it, that the commissioners acted in good faith, under the mistaken advice and

belief that ample discretion was vested in them to reject the bid of the relator, upon the information which they had. We are equally satisfied, that, whether any discretion is vested in them or not, they acted upon insufficient information, and to some extent incorrect information, and that they offered the relator no opportunity to put them in possession of the real facts, before deciding against awarding him the contract. We must assume that if the commissioners, when the charges were made against Mitchell, had given him a hearing, he would have satisfied them, as he had us, that there was, in fact, no reason why this contract should not be awarded to him.' In the latter, it was rejected for alleged non-compliance with the condition as to security, and there the court said: 'We must assume that the defendants put their refusal to grant the contract to Vickerman solely on the ground that his certificate of deposit did not conform to that required by the notice. That it did so conform in substance, if not absolute in form, and gave to the defendants the whole benefit of the deposit, equally as if it had been in every respect formal. That such being the case, there was no *discretion* left in the board to award to the relator the contract. He was entitled to it as matter of right and of law.' " And finally the statute in effect when the *Butler* case was decided in 1911, Sections 5 and 22, Chapter 16, Code, 1906, has been amended with regard to the factors to be considered in determining the lowest responsible bidder. The earlier statute merely provided that the contract should be awarded to the lowest responsible bidder and did not require any factors to be taken into consideration in determining such bidder as does the present statute.

Article VI, Section 34, of the Constitution of this State provides, in part, that "The Legislature shall provide by law that the fuel, stationery and printing paper, furnished for the use of the State; the copying, printing, binding and distributing the laws and journals; and all other printing ordered by the Legislature, shall be let by contract to the lowest responsible bidder,". Pursuant to the mandate of the Constitution, the Legislature enacted Chapter 132, Acts of the Legislature, 1961, Regular Session, which amended

the Code of 1931, by adding Chapter 5A, the pertinent portions of which are quoted in the majority opinion. Section 14, Article 3, of that enactment provides that all open market orders, purchases based on advertised bid requests, or contracts made by the director of purchases or by a state department shall be awarded to the lowest responsible bidder and that in determining the lowest responsible bidder the qualities of the articles to be supplied, their conformity with the specifications, their suitability to the requirements of the state government, and the delivery terms shall be taken into consideration.

The statute is mandatory, not directory, and imposes the imperative duty upon the director or the state department to determine, under the terms of the statute, the lowest responsible bidder and to award the contract made by the director or the department to such bidder.

If the director or the department is permitted to ignore the mandate of the statute and exercise discretion arbitrarily or capriciously in designating the lowest responsible bidder and in awarding the contract to a person who in fact is not the lowest responsible bidder the mandate of the statute is defeated, its mandatory character is emasculated, and the statute is rendered merely directory in character, contrary to the express legislative purpose to safeguard the public funds of the State. Such arbitrary or capricious action will not be permitted by this Court and mandamus lies to control the arbitrary or capricious exercise of the discretion by the director or the department.

The sole basis for the refusal of the defendant, as director of purchases, to honor the admittedly lowest bid submitted by the petitioner is its allegedly unsatisfactory financial condition or status. The principal part of the allegation on this point in the answer of the defendant is that the petitioner "was refused the contract because its financial statements do not show that it is a responsible bidder and able to perform the contract as set out by the State of West Virginia."

The ability of the petitioner to comply with the statutory requirements concerning the qualities of the articles to be

supplied, their conformity with the specifications, their suitability to the requirements of the state government, and the delivery terms is clearly established by the pleadings and the proof and is not challenged or denied by the defendant who failed to testify as a witness in support of his contention that the financial condition of the petitioner is not sufficient to enable it to perform the contract. The record discloses that the petitioner, though a small and recently organized business enterprise, is a going concern which has obtained and is now engaged in performing similar printing contracts with the United States for quantities in excess of those required in the requested contract with the State; that, though it does not have a large amount of working capital and does not own its operating facilities and owes indebtedness to judgment creditors who are friendly and not presently pressing for payment, it is in possession of and is operating a plant and facilities adequate to enable it to perform the requested contract; that it employs six experienced production workers; and that its president and production manager have had at least fifteen years experience in the performance of state contracts similar to the requested contract and are well qualified to satisfy the requirements of the qualities of the articles to be supplied, their conformity with the specifications, their suitability to the requirements of the state government, and the delivery terms. The record also shows beyond question that the petitioner possesses sufficient financial strength and monetary credit to furnish, as it did with its bid, a bond in the penalty of $50,000.00 with a bonding company as surety, and is able to give a sufficient bond to assure its performance of the contract and that, the bid of the petitioner in the amount of $62,049.50, being $51,266.70 less than the next lowest bid of $113,316.20 which the defendant has accepted, the rejection of the bid of the petitioner will result in a loss or an additional expense to the taxpayers of the State of the difference of $51,266.70.

From the foregoing it is evident that the attitude of the director, at least in this instance, is that a small enterprise which happens to have an indebtedness but which nevertheless is a going concern whose operators and facilities are

capable of performing the contract which it seeks and is able to guarantee its performance, will not be awarded a contract which will save the State the sizeable sum of $51,266.70. If it is necessary for a successful bidder to be of many years experience, affluent and without indebtedness, there is little, if any, inducement for the establishment and maintenance of newly created small businesses of moderate means in the economic development of this State. To me such an attitude is neither desirable nor economically defensible from any practicable point of view and should not be given judicial sanction. It should be obvious that to enable a new business to expand it must in the beginning be trusted with sufficient orders to permit its growth and development.

The foregoing clearly established facts do not indicate inability or lack of qualification of the petitioner to perform the contract which it requests with a resultant saving of $51,266.70 to the State and its taxpayers. On the contrary, those facts are sufficient to prove to my satisfaction that the petitioner is in all respects qualified, financially and from the standpoint of experience, to perform fully and satisfactorily the requested contract and that it is the duty of the defendant, under the statute, to honor the lower bid of the petitioner and to award it the contract which it seeks and requests instead of honoring the greatly increased bid of the next highest bidder. With respect to that action of the defendant it is pertinent to observe that there is no showing in this proceeding that the successful bidder possesses greater financial strength or credit than the petitioner, or that it owns its facilities or owes no debts, or that its operators or production workers have the same amount of experience in the performance of contracts of the type requested by the petitioner as that possessed by the production managers and workers of the petitioner.

In the light of the well established facts and circumstances mentioned and referred to in this dissenting opinion, the action of the defendant in rejecting the bid of the petitioner in the amount of $62,049.50 and in accepting the next highest bid of $113,316.20 for the identical contract requested

by the petitioner at a loss or the additional cost of the difference of $51,266.70 in the public funds contributed by the taxpayers of this State, in my considered opinion, constitutes an arbitrary, capricious, and intolerable exercise of discretion which should not be permitted but instead should be controlled in a mandamus proceeding in this Court.

For the reasons stated and under the authorities cited and referred to in this dissenting opinion, I would award a writ of mandamus as prayed for by the petitioner and require the defendant to award it the contract which it seeks to obtain; and I am authorized to say that Judge Calhoun concurs in the views expressed in this dissent.