## SALEM SAND AND GRAVEL CO. v. OLCOTT, GOVERNOR.*

(191 Pac. 776.)

**Mandamus will not Control Exercise of Discretion.**

1. Where public officers have discretionary powers as to performance of an official duty, writ of *mandamus* will not issue to control their discretion.

**Mandamus—Demurrer to Answer Admits Averments.**

2. A demurrer to the answer to a petition for *mandamus* admits the averments thereof.

**Navigable Waters—Land Board has Discretion in Leasing for Taking Gravel, and Could Reject Only Bid Made.**

3. Under Laws of 1920 (Sp. Sess.) Chapter 32, Sections 1–3, authorizing the state land board to lease the beds of navigable streams for the purpose of removing gravel, leases to be made

*On remedy of lowest bidder for refusal of authorities to award contract to him, see notes in 26 L. R. A. 711; 30 L. R. A. (N. S.) 128.   REPORTER.

after notice of competitive bidding, fixing the formalities as to the bids and providing that the board on leasing may fix stipulations protecting the rights of the state, the board has a discretionary power, and it may reject the only bid made, which was for a long time lease at a very low price, where it had given notice that any and all bids might be rejected, for to allow a lease on the terms would not have been advantageous to the state.

Original proceeding in Supreme Court in *mandamus.*

Department 2.

This is an original proceeding in *mandamus.* The plaintiff is an Oregon corporation engaged in buying and selling sand and gravel, with its principal office and place of business in the City of Salem. The defendants are the members and the clerk of the state land board of Oregon.

The petition for an alternative writ alleges that the Willamette River is a navigable stream within the boundaries of the state, and that pursuant to statute the state land board adopted and promulgated certain rules and regulations relating to the sale and leasing of sand and gravel, prescribing the notice necessary to be given of the receipt of competitive bids for such sale and leasing, the stipulations to be contained in such leases necessary to protect the interests of the state, the requiring of a bond and the forfeiture thereof for failure to operate under the lease. It is charged that thereafter the board duly caused to be published a notice to the effect that it would receive bids up to 11 A. M., May 18, 1920, for a lease and permit to take, remove, and sell sand and gravel from that portion of the bed of Willamette River within Marion County, specifically described in the petition; and that the bids should specify the amount offered per cubic yard, the minimum yardage for each year, and the term for which the lease was desired, and should be accompanied by a certified check for 10 per

cent of the amount of the bid for one year and a map showing the premises and owners of abutting property with the residence and postoffice address of such owners.

The plaintiff alleges that on May 17, 1920, it submitted its bid in the amount of three cents per cubic yard for a lease of the described portions of the river-bed for a term of five years, and offered to remove a minimum of 5,000 cubic yards each year, forwarding with the bid a certified check for $15, which was 10 per cent of the amount of the bid for one year; that attached to such bid was a map in triplicate, showing the premises; that the bid complied in all respects with the notice, rules, and regulations of the state land board, and was the highest received; that on May 28, 1920, the defendants considered the application, and, "contrary to law, rejected the same, and refused to enter into a contract with the plaintiff herein for the leasing and sale of gravel, rock and sand in the bed of that portion of the Willamette River above described, and do now refuse to enter into such lease or contract"; that the plaintiff has no plain, speedy, or adequate remedy at law; that the right to the performance of the act sought to be required is clear; and that the defendants can give no valid excuse for their refusal.

Answering, the defendants admit the advertisement for bids under the rules and regulations of the statute, a copy of which is attached as an exhibit, and the receipt of the bid and bond of the plaintiff as alleged. As a further and separate defense it is alleged that the application of the plaintiff came on for hearing before the board on May 28, 1920, and was duly considered; that because it appeared to the board that it was not expedient or for the best interests

of the State of Oregon to accept any bid for less than a minimum charge of ten cents per cubic yard, and was not advisable to grant a lease for the yardage desired, for the price offered for five years, the application was rejected; and that the defendants then declined and still refuse to enter into a contract with the plaintiff for less than a minimum price of ten cents per cubic yard. They deny that such refusal is contrary to law.

Among other things, the published notice recited that "the board reserves the right to reject any and all bids, whether before or after the award, * * and reserves the right to lease the whole of the described premises or any portion thereof," and that "all bids shall be made subject to the terms, provisions and conditions of the rules and regulations adopted and promulgated by the state land board of the State of Oregon, for the purpose of carrying out and making effective the provisions of chapter 32 of the General Laws of Oregon, adopted at the special legislative session of 1920, and on file with the undersigned and open to public inspection." The rules and regulations to which reference is made provide in part that "the state may lease beds of navigable portions of navigable streams for the purpose of removing gravel, rock and sand therefrom," that "leases will be executed in the discretion of the state land board, upon competitive bidding after notice," and that "any lease shall be given for such a period of time as may be determined by the board."

The plaintiff demurred to the further and separate answer on the ground that it did not state facts sufficient to constitute a defense. It contends that because it has complied with all required formalities and submitted the highest and only bid, it is the

legal duty of the defendants to award it the desired lease for the period of five years at the price stipulated in the bid. The defendants claim that their authority is discretionary, and that they rejected the plaintiff's bid in the exercise of that discretion, for the best interests of the state. DISMISSED.

For the plaintiff there was a brief over the names of *Messrs. McNary, McNary & Keyes* and *Mr. E. M. Page,* with oral arguments by *Mr. John H. McNary* and *Mr. Walter E. Keyes.*

For the defendants there was a brief over the name of *Mr. George M. Brown,* Attorney General, with oral arguments by *Mr. Brown* and *Mr. L. A. Liljeqvist.*

JOHNS, J.—The question presented involves the construction of Chapter 32, Laws of 1920, entitled "An act relating to the use, leasing and sale of gravel, rock and sand in the beds of navigable streams, and under navigable waters, by the state land board; relating to and providing penalties for the violation of this act, and declaring an emergency," and the powers and duties of the state land board thereunder. The material provisions of the enactment are as follows:

"Section 1. The state land board is hereby authorized to lease the beds of navigable portions of navigable streams for the purpose of removing gravel, rock and sand therefrom. Such lease shall not be made except after notice of competitive bidding. * *

"Section 2. Any person desiring to take gravel, rock or sand from state properties may apply to the state land board for a lease, and such application shall be accompanied by a map showing the premises and the ownership of the abutting property. After

such notice as may be prescribed by the state land board, it shall receive sealed bids on the lease and thereafter award the lease to the highest bidder. * *

"Section 3. The state land board may thereafter enter into contract of lease with such stipulations protecting the interest of the state, as the land board may require, and require a bond to be given by the lessee for performance of such stipulations, and providing for forfeiture for nonpayment or failure to operate under said contract. * * "

Section 4 permits the employment of assistance to carry out the terms of the act, and requires the services of the attorney general and state engineer when needed. It specifies also that after the payment of all incidental expenses the proceeds of sales and leases under the act are to be turned over to the irreducible school fund. Subject to the exceptions therein stated, Section 5 makes it unlawful for anyone to remove gravel, rock, or sand from the bed of any navigable stream without the consent of the state land board, and specifies a jail sentence or a fine for violation of the act.

The answer states and the demurrer admits that the rules and regulations were adopted by the board "for the purpose of carrying out and making effective the provisions of Chapter 32," Laws of 1920, and that they specify:

"Leases will be executed in the discretion of the state land board * * for such a period of time as may be determined by the board."

The demurrer also admits that in the published notice for bids the board reserved "the right to reject any and all bids, whether before or after the award," and that "all bids shall be made subject to the terms, provisions and conditions of the rules and regulations adopted and promulgated by the state land board."

1–3. The defendants are public officers of the state. The rule in such cases is well stated in High's Extraordinary Legal Remedies (3 ed.), Section 42, as follows:

"In all matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, *mandamus* will not lie, either to control the exercise of that discretion, or to determine upon the decision which shall be finally given. And whenever public officers are vested with powers of a discretionary nature as to the performance of any official duty, or in reaching a given result of official action they are required to exercise any degree of judgment, while it is proper by *mandamus* to set them in motion and to require their action upon all matters officially intrusted to their judgment and discretion, the courts will in no manner interfere with the exercise of their discretion, nor attempt by *mandamus* to control or dictate the judgment to be given."

3 McQuillin on Municipal Corporations, Section 1229, says:

"Where discretion is conferred to reject 'any and all bids,' it is held that the courts will not interfere with the discretion unless exercised with a fraudulent intent, to the injury of the party complaining, and where the injury is to be a vested right. * *

"Although it is a rule of the board empowered to let certain contracts to award the contract to the lowest and best bidder, yet if it reserves the right to reject any and all bids, no bidder can claim any contractual rights until he has been awarded the contract."

In *Molloy* v. *City of New Rochelle*, 198 N. Y. App. 402 (92 N. E. 94, 30 L. R. A. (N. S.) 126), the opinion by Mr. Justice CHASE states the rule thus:

"No contractual relation can arise merely from a bid unless by the terms of the statute and the adver-

tisement a bid in pursuance thereof is, as a matter
of law, an acceptance of an offer wholly apart from
any action on the part of the municipality or any of
its officers.''

We quote the following from 28 Cyc., page 1030:

"The right to reject all bids is often expressly se-
cured to the municipality by charter; but, even in the
absence of such express 'grant, it is very generally
held that the proper municipal authorities may, at
their discretion, reject all bids, especially if the right
to do so has been reserved in the advertisement.''

It is true that in *Springfield Milling Company* v.
*Lane County,* 5 Or. 265, under the facts there shown
to exist, this court held:

"When a public body or officer has been clothed by
statute with power to do an act which concerns the
public interest, the execution of the power is a duty,
and, though the phraseology of the statute be permis-
sive, it is nevertheless to be held peremptory. * *
"When a statute confers upon an inferior tribunal
power, and at the same time, prescribes a mode of
exercising that power, the *mode* becomes the *measure*
of the power, and such mode must be substantially,
if not strictly, followed.''

But in the same opinion it is said:

"There can be no question but that the County
Court had been invested with this power of providing
for the construction and repair of bridges, and of
appointing a superintendent in such a case, for the
public good, and that the construction and repair of
bridges concerns the public interest.''

It will be noted that the court there found that the
power vested in the County Court was for the public
good, and that the repair and construction of county
bridges were matters of public interest. In the in-
stant case there is nothing in the statute or the plead-

ings from which this court could hold that it would be for the public good or in the interest of the state to award the lease to the plaintiff according to its bid. The answer here alleges, and the demurrer admits the defendants' claim, that:

"It is not expedient or for the best interests of the State of Oregon, or the irreducible school fund thereof, to enter into a lease or contract for less than such minimum yardage of ten cents per cubic yard or upon the terms applied for by plaintiff."

The law was enacted for the use and benefit of the state in its sovereign capacity.

In *State ex rel.* v. *Malheur County Court,* 54 Or. 255 (101 Pac. 907), this court held:

"If the making of an order is a mere ministerial act, involving no exercise of judgment or judicial power, *mandamus* is the proper remedy to compel it; but where an act is judicial or involves the exercise of judgment or discretion, and such judgment has been exercised, *mandamus* will not lie to compel amendment or correction thereof, though the action was erroneous."

Analyzing Chapter 32, Laws of 1920, we note in Section 1, "the state land board is hereby authorized." The word "authorized" is synonymous with "empowered." In the sense here used it implies discretion. In *Armstrong* v. *Murphy,* 65 App. Div. 123, 125 (72 N. Y. Supp. 473, 474), it is said:

"The rule undoubtedly is that where public bodies or officers are empowered to do that which the public interests require to be done, and adequate means are placed at their disposal, the proper execution of the power may be insisted on, though the statute conferring it be only permissive in its terms. * * The word 'may' is thus construed at times to mean 'must.' But why, it may be asked, should this construction be given to the act under consideration? What public

interest demands that the mayor should be required, under all circumstances, to accept the fee and grant the license? It seems to me that it is quite the other way. The public good * * requires that the permissive words in question should be read in their natural and ordinary sense.''

It is true that Section 2 of the act says that upon the receipt of bids the defendant ''shall'' thereafter award the lease to the highest bidder. Standing alone, this might support the contention of the petitioner, but Section 3 provides that the board shall enter into contracts, ''with such stipulations protecting the interests of the state as the land board may require.'' 2 Lewis' Sutherland on Statutory Construction (2 ed.), page 1116, announces the following rule:

''Unless a fair consideration of a statute, directing the mode of proceeding of public officers, shows that the legislature intended compliance with the provision in relation thereto to be essential to the validity of the proceeding, it is to be regarded as directory merely. Those directions which are not of the essence of the thing to be done, but which are given with a view merely to the proper, orderly, and prompt conduct of the business, and by the failure to obey which the rights of those interested will not be prejudiced, are not commonly to be regarded as mandatory.''

Considering the purpose and language of the act, it was never the intent of the legislature that the defendants should be required to sell or lease sand or gravel belonging to the state, at anything but a fair and reasonable price. When the petitioner submitted its bid, it knew of the existence of the rules and regulations, and that under the terms of the published notice the defendants reserved the right to reject any and all bids. Its offer to contract was based upon

and subject to the published notice and such rules and regulations. If the defendants could now be compelled to execute a lease for five years at a stipulated price of three cents per cubic yard, for like reasons and under similar conditions they could be required to execute a lease for twenty-five or fifty years at a price of two cents or even one cent per cubic yard. That was never the intent of the legislature.

The petition is dismissed.    DISMISSED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.