## R. G. Wilmott Coal Co. v. State Purchasing Commission et al.

(Decided Nov. 22, 1932.)

116

H. C. CRESS for appellant.

BAILEY P. WOOTTON, Attorney General, OVERTON S. HOGAN, Assistant Attorney General, and E. V. PURYEAR for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Affirming.

R. G. Wilmott, who is engaged in the retail coal business at Danville under the trade name and style of R. G. Wilmott Coal Company, instituted this action in the Franklin circuit court on September 10, 1931, against the state purchasing commission, Clell Coleman, auditor, and the Danville Ice & Coal Company, alleging, in substance, in his petition that the purchasing commission advertised for bids for furnishing run of mine coal to the Kentucky School for the Deaf at Danville for the fiscal year beginning July 1, 1931, and ending June 30, 1932; that within the time provided in the advertisement he filed with the commission his bid offering to furnish to the School for the Deaf run of mine coal for the price of $3.43 delivered, and at the same time executed and tendered to the commission his bond with good and sufficient surety conditioned for the faithful performance of his bid; that thereafter the commission executed and delivered to the Danville Ice & Coal Company a contract to supply and deliver coal to the School for the Deaf for the sum of $3.59; that he was the lowest and best bidder; and that the act of the purchasing commission in awarding the contract to the Danville Ice & Coal Company was in violation of the statute of this state. He asked that the contract made by the commission with the Danville Ice & Coal Company be canceled and held to be null and void; that the auditor be enjoined and restrained from drawing his warrant on the treasurer in payment for coal delivered under the contract, and that the purchasing commission be required by mandatory order to award to him the contract for the delivery of the coal for the balance of the fiscal year ending June 30, 1932.

The state purchasing commission and the auditor filed a demurrer to the petition and, without waiving same, filed answer. The Danville Ice & Coal Company filed general and special demurrers, which were sustained, and thereupon plaintiff filed an amended petition

alleging that he is a citizen and taxpayer of the commonwealth; that the state purchasing commission, acting by and through its chairman, by fraud or mistake, accepted the bid of its codefendant, the Danville Ice & Coal Company, and entered into a contract with that company to furnish coal to the Kentucky School for the Deaf for the fiscal year beginning July 1, 1931; and that but for such fraud or mistake, his bid would have been accepted and the commission would have entered into a contract with this plaintiff to furnish such coal. He also filed a second amended petition, in which he alleged that the fraud and mistake charged in the amended petition consisted in the following:

"That this plaintiff duly transmitted to and filed with the defendant, State Purchasing Commission his bid, who unlawfully, wrongfully, and in violation of plaintiff's rights, either by fraud, oversight, mistake or collusion, failed or refused to read or to consider said bid.

"That this plaintiff was the lowest and best bidder having regard for the quality and price of the product bid upon and offered to be furnished to the Kentucky School for the deaf and that if his said bid had been read, received and honestly and fairly considered this plaintiff would have been successful bidder thereon and the contract to furnish coal for said School for the Deaf would have been awarded to this plaintiff."

A demurrer to the petition as thus amended having been sustained and plaintiff declining to further plead, his petition was dismissed and he has appealed.

Counsel for appellant prefaces his argument for reversal with the assertion that section 3990-15, Kentucky Statutes, relating to the letting of contracts for materials, equipment, and supplies for the state is mandatory in so far as it provides that such contract shall be awarded to the lowest and best bidder. However, he qualifies this assertion by the further statement that the statute in question vests in the commission a discretion in determining who is the lowest and best bidder after taking into consideration all the attending circumstances. There is ample authority supporting the contention that the provision in question is mandatory, and there is practical unanimity of authority that statutes of this and like character vest officials charged

with their administration with a wide discretion. Unquestionably this section of the statute clothes the commission with a discretion to determine in every instance who is the lowest and best bidder, and while in a number of states it has been held that courts will not interfere in cases of this character involving an exercise of discretion upon the part of officials, we find the greater weight of authority to be that reason must govern the acts of such officials and that courts will not hesitate to interfere when it is clearly made to appear that they have acted arbitrarily, dishonestly, or beyond the reasonable limits of the discretion conferred upon them.

A study of this statute discloses that its underlying purpose is to encourage competitive bidding to the end that supplies for departments and institutions of the government may be secured at the most favorable prices. Obviously in enacting it, the Legislature had in mind the welfare of the public and not that of the individual seeking to sell supplies to the state.

The lowest bid may be determined by monetary standards with the dollar as the unit, but not so in determining the best bid, since that question involves a number of other factors and elements. Most of the cases in other jurisdictions are dealing with statutes dissimilar to ours, in that they embody the words "lowest responsible bidder" where ours uses the words "lowest and best bidder." Also we find that most of the cases involve bids for public work where there are fixed standards and specifications for the work to be done, so that the quality of material to be furnished does not enter into question. In construing the meaning of the words "lowest responsible bidder," the cases are in practical agreement that they do not mean the lowest financially only, but apply as well to the business judgment, capacity, skill, responsibility, etc., of the bidder. Inge v. Board of Public Works, 135 Ala. 187, 33 So. 678, 93 Am. St. Rep. 20; Williams v. Topeka, 85 Kan. 857, 118 P. 864, 38 L. R. A. (N. S.) 672, Ann. Cas. 1913A, 497; Maryland Pavement Company v. Mahool, 110 Md. 397, 72 A. 833, 17 Ann. Cas. 649; State ex rel. Eaves v. Rickards, 16 Mont. 145, 40 P. 210, 28 L. R. A. 298, 50 Am. St. Rep. 476; Flynn Construction Company v. Leininger et al., 125 Okl. 197, 257 P. 374; Bright v. Ball, 138 Miss. 508, 103 So. 236; People v. Omen, 290 Ill. 59, 124 N. E. 860; Hibbs v. Arensberg,

276 Pa. 24, 119 A. 727; Chaffee v. Crowley, 49 N. D. 111, 190 N. W. 308; West v. City of Oakland, 30 Cal. App. 556, 159 P. 202. To say the least, the words "lowest and best bidder" as used in our statute are as comprehensive as "lowest responsible bidder" used in the statutes of most other states, and where, as in this instance, the standard of quality is not definitely fixed, that too would be a factor in determining the lowest and best bidder.

The decision as to the lowest and best bidder in this instance necessarily called for an exercise of judgment and discretion upon the part of the commission, and the determining of that question involved not only the least expenditure of public funds but also a consideration of the quality of the goods proposed to be furnished and the other factors and elements to which we have heretofore adverted.

The fact that a bidder executed bond for the faithful performance of the contract did not limit the governing authorities to the lowest pecuniary bid, but it was still their duty and within their discretion to take into consideration all other pertinent factors and elements in determining the lowest and best bid. That this governmental agency to be served, may properly function, and the comfort and well-being of those who by reason of misfortune have become wards of the state may be safeguarded, prompt and efficient performance of a contract to furnish supplies is necessary. The welfare of those wards as well as the public interest is better subserved and promoted by faithful performance by the contractor than by resort to indemnity, since in the very nature of things such remedy is inadequate and too often entails litigation, expensive delays, and damages which cannot be adequately measured or compensated.

Counsel for appellees argue that since this statute was enacted in the public interest and not for the benefit of the unsuccessful bidder, appellant cannot maintain this action. There are many cases so holding, but it is unnecessary to follow counsel into that question, as the judgment is to be affirmed on other grounds.

Granting that upon a proper showing, appellant may maintain this action, we are left to determine the sufficiency of the allegations of the petition on demurrer. All else being equal, it was the duty of the commission

under the statute to accept the bid involving the least expenditure of public funds, and while the petition does disclose that appellant offered to furnish the coal at a lower price than did the successful bidder, his allega· tions as to being the "best" bidder amount to nothing more than conclusions. While he charges that the commission through fraud and collusion refused to accept his bid, when, considering quality, it was the lowest, he does not specify any acts or conduct constituting the alleged fraud or collusion or show that the coal he offered was equal in quality and in fitness for the purpose for which it was to be used.

That the petition should specify with particularity the acts of fraud, etc., was decided in the case of Town of Russell v. Whitt, 161 Ky. 187, 170 S. W. 609, 611, wherein it was said:

"The complaint of fraud or mistake made in the petition may also be eliminated from the case. The general allegation in the petition that appellant's board of trustees, in assessing against appellee's property its proportion of the cost of the improvement, were guilty of fraud or mistake is a mere conclusion of the pleader. The petition omits any specification of the acts or conduct constituting the alleged fraud or mistake, and there is no proof whatever on the subject. The rule in this jurisdiction is that the petition in such case must specify the nature and substance of the fraudlent acts or the acts resulting in the mistake, and this is especially true when the acts complained of are those of public officials, who are always presumed to act lawfully in the performance of the duties to the public."

In the case of Trapp v. City of Newport, 115 Ky. 840, 74 S. W. 1109, it was held that the fact as to whether or not one is the lowest and best bidder depends upon proper consideration of other questions besides price; that these questions are peculiarly within the province of officials invested with the power of making contracts for the public; and that courts should proceed with great caution when asked to interfere with the discretion conferred upon such officials by statute in regard to such matters.

In the light of the authorities we are led to the

conclusion that the demurrer to the petition was properly sustained.

Judgment affirmed.