Argued May 1, affirmed September 27, 1961

# JOHNSON *v.* CRADDOCK ET AL
365 P. 2d 89

*W. F. Schroeder,* Vale, argued the cause for appellant. On the briefs were W. F. Bardwell, Burns, and Lytle, Schroeder & Denning, Vale.

*Michael S. Mogan,* Burns, argued the cause for intervenors-respondents. On the brief were Irving C. Allen, District Attorney, Burns, and Waterman & Mogan, Burns.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

WARNER, J.

This is an action for a writ of mandamus. It is brought by petitioner Johnson to compel the Harney County Court to sell certain tax-foreclosed property to him. He claims as his right to such relief that the county contracted to sell the property to others, notwithstanding his larger bid for the same.

Defendants and intervenors successfully demurred to petitioner's amended alternative writ. Upon Johnson's refusal to plead further, the trial court sustained the demurrer and disallowed the writ, whereupon he appealed.

The demurrer challenged the sufficiency of the writ. It projects as the cardinal question for our consideration whether the county court when rejecting the Johnson bids and accepting bids of others in lesser money amounts was exercising discretionary powers or acting ministerially.

Harney county had previously acquired title to 13 tracts of land through tax foreclosure sales. It later duly offered these parcels for sale at public auction by the sheriff under ORS 275.120[1], but received no bids for any of them.

---

[1] ORS 275.120: "Upon receipt of a certified copy of the order referred to in ORS 275.110, the sheriff shall publish a notice of the sale of such property in a newspaper of general circulation, printed and published

Thereafter, the county court, acting pursuant to ORS 275.110② and 275.200③ advertised these tracts for sale to the "highest bidder."

The notice (without headline or signature) read:

"Notice is hereby given that Harney County will sell to the highest bidder, thirteen (13) tracts of tax foreclosed land situated in Harney County, Oregon. Offers must be by sealed bid which will be opened by the County Court at 10 A.M., March 10, 1959 in the court room of said Harney County Court House, Burns, Oregon.

"The legal descriptions of the tracts to be sold, bid forms and *information of terms of sale may be secured at the office of the County Judge at any time between the hours of 8:30 A.M. to 12 noon and 1 P.M. to 5 P.M., Mondays through Friday inclusive.*

"Any person may bid on any one or all of said tracts; bids will be received at any time after the publication of this notice, up to 10 A.M., March 10, 1959.

in the county where the land is situated, once each week for four consecutive weeks prior to such sale. The notice shall state the time and place of sale, the description of the property or interest therein to be sold, the minimum price as fixed by the county court, the date of the order directing such sale, and such other matters as the county court deems pertinent. Proof of publication of such notice shall be made in the same manner as proof of publication of summons is made, and shall be filed by the sheriff with the county clerk of such county, and then recorded in the deed record thereof."

② ORS 275.110: "Whenever any county court deems it to be for the best interests of the county to sell any real property acquired by such county by foreclosure of delinquent tax lien or by exchange, devise or gift, or any interest therein less than the whole fee, it shall enter an order upon its records directing the sheriff to make sale thereof, and fix the minimum price for which each interest, parcel or group of parcels may be sold and the conditions and terms of sale. The order may be amended from time to time or revoked as the court may deem proper."

③ ORS 275.200: "If any such lands remain unsold after the time set for the sale thereof in the sheriff's published notice or after any adjournment of such sale, the county court may, at any meeting thereof for the transaction of county business, sell such lands, or any part thereof, or any interest therein less than the whole fee, at private sale without further notice but for not less than the largest amount bid therefor at any such sale, or, if no bid therefor was made, at such price as the county court deems reasonable. A sale under this section shall be made for cash or under written agreement as provided by ORS 275.190."

"It is ordered that this notice be published in the Burns Times Herald, a newspaper of general circulation in Harney County, Oregon, on February 5, February 12, and February 25, 1959." (Emphasis supplied.)

Johnson submitted separate bids for each of the 13 parcels, together with checks representing one-third of the total amount bid for each tract. We are here concerned only with four of his bids; that is, those made for tracts 4, 5, 6 and 10.

Each of these four bids was identical in terms, except for land descriptions, land areas and the amount of the bid. We, therefore, set up only one bid (for tract 6) to disclose the general content of the four:

### "BID ON HARNEY COUNTY TAX FORECLOSED LANDS

"I, Kenneth A. Johnson, hereby submit a bid of $2.11 per acre on the following described tax foreclosed lands; bids to be opened and read the 10th day of March 10AM, 1959, in the County Court Room, Harney County Court House, Burns, Oregon:

"[here follows description of tax-foreclosed lands]

"Containing 1600 acres, more or less.

"Enclosed herewith bidder tenders $1,126.00, which amount is at least one-third of $3,376.00, which is total amount of this bid. (Bid payment shall be in cash, Certified check or Cashiers check.) If bid is approved, balance to be paid either in cash, or if preferred, in not more than five (5) equal, annual payments, plus 6% interest on all deferred payments.

"*It is understood that Harney County, Oregon, reserves the right to reject any or all bids* and that any bid made for less than $2.00 per acre will not be considered. (All money deposited by un-

successful bidders with their respective bids shall be returned to them within thirty (30) days after the date of the opening of the bids.)

"It is also understood that Harney County reserves the right to right-of-way for county roads and highways.

"Dated this 9th day of March, 1959, at Burns, Oregon.

"NOTE: Bids for less than $2.00 per acre will not be considered." (Emphasis supplied.)

Johnson bid $2.11 per acre for tracts 6 and 10 and $2.55 per acre for the land comprising tracts 4 and 5.

The bids of others for tracts 4, 5 and 6 were lower than those made by Johnson for the same parcels. The writ reveals that bids for those tracts on a per-acre basis were, respectively, $2.25, $2.20 and $2.06.. Petitioner's bid for tract 10 was the only bid received for that parcel but was not accepted.

The problem presented to us by the record may be more simply stated in this form: Was the county court vested with a discretionary power to examine the various bids and in the exercise of that right, determine which bids were in the best interests of the county, notwithstanding their monetary disparities.

The defendants assert that such powers of discretion were imposed upon the county court by the statutes to which we will later make further reference; and, therefore, mandamus will not lie to compel the relief which petitioner seeks.

The petitioner, to the contrary, relies upon a construction of ORS 275.200, supra, which, he says, casts upon the county court a ministerial duty rather than a discretionary power with respect to the acceptance or rejection of the bids, and acting ministerially it

had no alternative but to accept his higher offers to purchase.

■■ While mandamus will lie to compel inferior tribunals, public officers or administrative bodies to perform duties or functions imposed upon them by law, it will not undertake to control judicial discretion as to the manner in which such duties or functions should be performed. ORS 34.110; *Olds v. Kirkpatrick,* 183 Or 105, 110, 191 P2d 641, and cases there cited. Even though the discretionary action was erroneous, mandamus will not lie to compel an amendment or correction of the judgment. *State v. Malheur County Court,* 54 Or 255, 258, 101 P 907, 103 P 446; *Salem Sand and Gravel Co. v. Olcott,* 97 Or 253, 261, 191 P 776.

■ Mandamus can be invoked, however, to correct an arbitrary abuse of discretion, in the absence of any other adequate remedy, even though it results in the court's review of the officer's exercise of discretionary power. *Riesland v. Bailey,* 146 Or 574, 578, 31 P2d 183, 92 ALR 1207; *Ruonala v. Board of County Commissioners,* 212 Or 309, 318, 319 P2d 898.

■ ORS 275.110, 275.120, 275.190(1)④ and 275.200 are, respectively, Sections 1, 2, 8 and 16 of ch 334, Oregon Laws 1949. They must be read *pari materia.* Two types of sales are provided for: (1) a sale at public auction by the sheriff after due notice (ORS 275.120) when ordered by the county court (see ORS 275.110); and (2) if no sale is consummated by the sheriff, the county court may thereafter sell the parcel without notice at a private sale (see ORS 275.200).

---

④ ORS 275.190(1): "All sales made under ORS 275.110 to 275.250 shall be to the highest and best bidder for cash or, in the discretion of the county court, for not less than 10 percent of the purchase price in cash, the remainder to be paid under written agreement with the purchaser in equal instalments over a term not exceeding 20 years from the date of sale, all deferred payments to bear interest from the date of sale at a rate not to exceed six percent per annum, payable annually."

In these sections we find a continuing overall element of discretion vested in the county court and underlying the sales procedures for county-owned property.

The right to sell any real property of the county accrues under ORS 275.110, supra. It is this section which authorizes a county to sell "Whenever * * * [the] county court deems it to be *for the best interests of the county * * *.*" (Emphasis supplied.) This marks the beginning point of the discretion conferred with relation to the county's power to dispose of its property. Reading the act of 1949 in its entirety reveals that the legislature had in mind the welfare and best interests of the county and not of the individuals seeking to buy property.

Under the provisions of ORS 275.190(1), supra, it is left to "the discretion of the county court" to exercise its discretion in three particulars: (1) whether the purchase price would be payable all in cash or by cash and credit; (2) the margin of cash required above 10 per cent of the purchase price, if on credit; (3) the terms of the credit, including the interest rate.

When we look to ORS 275.200 we find it, too, couched in terms of some discretion. There we learn that "If any such lands remain unsold after the time set * * * in the sheriff's * * * notice [see ORS 275.120 and 275.140] * * * the county court *may*, at any meeting thereof * * * sell such lands * * * at private sale without further notice *but for not less than the largest amount bid therefor at any such sale,* or, if no bid therefor was made, at such price as the county court deems reasonable." (Emphasis supplied.)

The petitioner's main argument turns on the construction of the phrase in ORS 275.200, supra, read-

ing: "the largest amount bid * * * at any such sale." He argues that it refers only to the bids made at any subsequent *private sale* conducted by the county court. To the contrary, the defendants represent the words "any such sale" refer to the largest amount which may have been bid at any previous public sale of the same property when offered at auction by the sheriff.

The interpretation accorded by the petitioner to the phrase "any such sale" rests solely upon a familiar rule of grammar that the word "such" refers to the last antecedent. The last antecedent in the exceptionally long sentence in which it appears is "private sale." Hence, petitioner argues that it became the duty of the county court to sell the four tracts to him because his bid at the private sale was in "the largest amount." To bolster this argument, petitioner assumes that the words "largest amount bid" found in ORS 275.200, supra, and "highest and best bidder" as employed in ORS 275.190(1), supra, are synonymous terms. We are not persuaded by these conclusions.

■■ We are not bound to accept and apply literally rules of grammatical construction. The doctrine of the last antecedent is not inflexible and is never applied when a further extension is clearly required by the intent and meaning of the context or when to apply a grammatical rule literally would lead to an absurd or unreasonable result, defeating the legislative purpose. *Fox v. Galloway,* 174 Or 339, 346, 148 P2d 922; *Allen v. Multnomah County,* 179 Or 548, 554, 173 P2d 475; *Swift & Co. and Armour & Co. v. Peterson,* 192 Or 97, 109, 233 P2d 216; *Holman Transfer Co. v. Portland,* 196 Or 551, 565, 249 P2d 175, 250 P2d 929; *State Highway Commission v. Rawson,* 210 Or

593, 610, 312 P2d 849. See, also, 82 CJS 682-683, Statutes § 340; 50 Am Jur 258, Statutes § 269.

The foregoing rule in its particular application to the instant matter is well and clearly stated as follows in 2 Sutherland, Statutory Construction (3d ed, Horack, 1943), 448-449:

> "Referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent. Thus a proviso is construed to apply to the provision or clause immediately preceding it. But where the sense of the entire act requires that the qualifying words apply to several preceding or even succeeding sections, the word or phrase will not be restricted to its immediate antecedent. Thus it is apparent that the rule relating to relative or referential terms is of no great force and will be applied only when its application is consistent with the legislative intention."

■ As a corollary to the rule last enunciated, we add: a slight indication of the legislative intent to extend the relative term to a more remote antecedent is sufficient. *Myer v. Ada County,* 50 Ida 39, 293 P 322, 323; *Board of Trustees of F. and P. Fund v. Templeton,* 184 Okla 281, 86 P2d 1000, 1004; *Norberg v. Montgomery,* 351 Mo 180, 173 SW2d 387, 390; 82 CJS, supra, at 672. Here, however, we find more than a slight indication of the legislative purpose.

We read the phrase "any such sale" as relating to an earlier sale made by the sheriff when directed by the county court under ORS 275.110. We find no necessity to insert words to accomplish that construction (ORS 174.010). But by way of clarifying our thought in terms of what we deem the obvious legislative design, we read the above phrase as if it had more clearly and artfully stated: "any such sale

had by the sheriff." The reasons which follow persuade us to that conclusion.

When we construe the challenged phrase, as we have above, we are certain that it was the legislative plan by its reference to the "largest amount bid therefor at any such sale" to adopt such "largest amount bid," if any, as the minimum bid for prospective buyers bidding at the private sale next following. In the statutes under review, we observe that the county is required to establish minimum prices for sales made by the sheriff under ORS 275.110 and like minimums for the private sales when made by the county court. But if no bid was made at a previous sheriff's sale (and none was made as to the instant property), then and then only, the county court must establish, as the minimum price, "such price as the county court deems reasonable" (ORS 275.200). If we assume that the reference found in petitioner's several bids to a minimum bid of $2 per acre was one of the conditions of the "terms of sale" (ascertainable only in the office of the county judge), then this is precisely what the county court apparently did in this instance. That such was a reasonable minimum is attested by the bids made, each being a few cents per acre in excess of the court's minimum amount.

We also note that the phrase "not less than the largest amount bid therefor at any such sale" is followed by the words "or, if no bid therefor *was* made [then], at such price as the county court deems reasonable." (Emphasis supplied.) The use of "was" connoting something past can only refer to a *past* offering by the sheriff at a public sale. If we were to adopt petitioner's construction; that is, as having reference to bids at a *future* private sale, then the phrase "or, if no bid therefor was made, etc." is rendered meaning-

less as an absurd and useless direction to the county. Moreover, to adopt the meaning the petitioner assigns to the "largest amount bid," would nullify the provisions of ORS 275.190(1) relating to the qualifications of a successful bidder at any sale made under ch 334, Oregon Laws 1949, supra.

ORS 275.190(1) must be observed at public sales made by the sheriff and at private sales made by the county court. That section commands the only type of bid which will prevail. The pertinent part reads:

> "*All sales* made under ORS 275.110 to 275.250 shall be *to the highest and best bidder* for cash or, in the discretion of the county court, for not less than 10 percent of the purchase price in cash, the remainder to be paid under written agreement with the purchaser in equal instalments over a term not exceeding 20 years from the date of sale, * * *." (Emphasis supplied.)

Thus, at either type of sale, a sheriff's public sale pursuant to ORS 275.110, or a private sale made by the county court, the successful bidder must be the "highest and best bidder." As we have earlier observed, petitioner seeks to avoid the impact of the well-established legal meaning of these significant words by asserting that "highest and best bidder" is synonymous with "the largest amount bid."

Had it been the legislature's purpose to authorize sales to be made to the highest cash bidder without more, it might have easily eliminated doubt by striking from ORS 275.190(1) the words "and best."

■ The phrase "highest and best bidder," as employed in ORS 275.190(1), supra, means more than a mere high dollar amount. "Highest," alone, would normally imply ministerial action on the part of the county court under the circumstances present here.

But the addition of the words "and best" imports a degree of selection which rests within the discretion of the county court.

The general rule has been stated by McQuillin as follows:

"The third class of provisions authorizes the letting of the contract to the 'lowest and best' bidder. Who is the 'best' bidder is not susceptible of definition, and in such cases the matter is left to the discretion of the officers awarding the contract. When the officers have exercised their discretion in the award of the contract, the presumption obtains that such action was regular and lawful, and such presumption can be overcome only by proof that the officers acted without justification or fraudulently." 10 McQuillin, Municipal Corporations (3d ed), 356, § 29.73. See, also, 55 CJS 316, Mandamus § 166.

■ Public officers charged with the duty of selling public property to the "highest and best bidder" or making contracts with the "lowest and best bidder" are vested with a wide discretion in determining who is, in fact, "the best bidder." *Donna Independent School District v. First. State Bank* (Tex Civ App 1921), 227 SW 974, 975; *Wilmott v. State Purchasing Commission,* 246 Ky 115, 54 SW2d 634, 86 ALR 127; *Hatcher v. Kentucky & West Virginia Power Co.,* 280 Ky 583, 133 SW2d 910, 913; *Keith v. Johnson,* 109 Ky 421, 59 SW 487, 488; *United States Wood Preserving Co. v. Sundmaker,* 186 F 678, 682 (6th Cir 1911); *State v. Board of Public Service,* 81 Ohio St 218, 90 NE 389, 391; *Brown v. City of Houston* (Tex Civ App 1898), 48 SW 760; *Fetters v. Mayor & Council of Wilmington,* 31 Del Ch 364, 74 A2d 470, 471; *State v. Dreyer,* 183 Mo App 463, 167 SW 1123, 1128; *State v. City of Lincoln,* 68 Neb 597, 94 NW 719, 720; *State*

*ex rel Walton v. Hermann,* 63 Ohio St 440, 59 NE 104; *State ex rel Stuewe v. Hindson,* 44 Mont 429, 120 P 485. See, also, Anno, 80 ALR 1382 et seq. (1932).

Mr. Justice McBRIDE, speaking for the court in *Kiernan v. City of Portland,* 61 Or 398, 122 P 764, concerning a sale of bonds at a price under par said at p 400:

"* * * The provision [of the city charter] directs that they shall be 'advertised and sold to the highest responsible bidder,' with the privilege reserved to the council to reject any and all bids that are not satisfactory. It seems more reasonable to infer from the language here employed that it was the intent of the lawmaking power to grant to the council the entire discretion to sell at the best advantage possible under the circumstances. * * *"

The phrase "lowest and best bidder" generally involves undertakings by state or municipal authorities looking to the purchase of materials or employment of services, whereas, the phrase "highest and best bidder" is found related to the less frequent activities of governmental entities seeking to sell some species of property, as in the case at bar.

The discretional determinations made with reference to what constitutes "the lowest and best bid" usually require a consideration of a greater number of elements in formulating a conclusion than would ordinarily be present when deliberating upon the acceptance or rejection of the "highest and best bid" for a sale of governmental property. In the latter class of bids, a usual, but not exclusive, question for consideration is the solvency of the bidder. See *Donna Independent School District v. First State Bank,* supra (227 SW at 975); *Kentucky Utilities Co. v. Steenman,* 283 Ky 317, 141 SW2d 265, 270.

█ We regard the rule entirely settled that where authority is given by statute to let a contract to the "lowest and best bidder" or to consummate a sale with the "highest and best bidder," discretion is thereby conferred and courts will not undertake to control such discretion by mandamus in the absence of a pleading and proof of an arbitrary, capricious or fraudulent exercise of the discretionary power conferred. One of the allegations found in the writ is: "the County Court by performing the acts before described has acted capriciously, arbitrarily, and unfairly, etc." If the "acts before described" relate alone to the county's failure to sell to Johnson as the highest bidder, then we have disposed of that contention by what we have above said concerning the county court's discretion when the statute directs a sale to be made to the "highest and best bidder." (ORS 275.190(1), supra) If, however, it refers to other acts deemed capricious, arbitrary and unfair, then the allegation is only a conclusion, demanding no further attention.

Thus far we have confined ourselves to a consideration of the issues of law argued by the parties in their respective briefs. We also find additional reasons compelling a repudiation of the writ for want of sufficient statement.

█ The writ is the foundation for all subsequent proceedings in mandamus. It has the same function as a complaint in other actions and, therefore, must state all the material facts and show a clear right to the relief demanded. *Crawley v. Munson,* 131 Or 428, 435, 283 P 29; *United States of America v. Cohn,* 201 Or 680, 684, 272 P2d 982. The writ must reveal, at least *prima facie,* a clear and existing right in the petitioner and allege performance by the petitioner of all conditions precedent. *Paine v. Wells,* 89 Or

695, 699, 175 P 430; *Ross v. County Court of Marion,* 147 Or 695, 701, 35 P2d 484; *Crawley v. Munson,* supra, at 436; *State ex rel Bowles v. Olson,* 175 Or 98, 106, 151 P2d 723; and also negative the existence of facts excusing defendant's performance. *Paine v. Wells,* supra, at 699; 35 Am Jur 94, Mandamus § 349.

We again call attention to the provisions of the published notice of sale informing prospective bidders that "information of terms of sale [might] be secured at the office of the County Judge * * *." But the writ in this matter does not allege what were, in fact, all or any part of the "terms of sale" to be found in the office of the county judge nor that the petitioner's bid was a full and complete compliance therewith. As far as we can glean, the form of petitioner's bids may incorporate only his own terms and conditions or only a part of the terms which were by the court made available to the inspection of the public in the office indicated by the notice. Moreover, the writ does not reveal that petitioner tendered the two-thirds of amount due on his bids, if accepted, nor is there an allegation to the effect that Johnson is willing, ready and able to make such further payments as might be required of him if successful in the mandamus action. 86 CJS 559, Tender § 3; 35 Am Jur, supra, at 94. See *Southern Pacific Co. v. Siemens,* 77 Or 62, 150 P 290.

The judgment of the circuit court in dismissing the writ is affirmed.