## FRED A. DAYTON, SR., *v.* DEPARTMENT OF REVENUE

### J. H. BAXTER & CO., *Intervenor*

Donald H. Coulter, Myrick, Coulter, Seagraves & Nealy, Grants Pass, appeared for plaintiff.

Michael S. Killoran, Balderree, Calvert, Killoran & Nelson, Grants Pass, appeared for intervenor taxpayer.

Defendant made no appearance.

Decision for plaintiff rendered June 2, 1972.

CARLISLE B. ROBERTS, Judge.

The County Assessor of Josephine County appeals from the Order No. VL 71-569 of the Department of Revenue, relating to the assessor's power to designate land as "forest land" or to refuse such designation, under subsection (4) of ORS 321.618.

On March 10, 1970, J. H. Baxter & Co., the intervenor herein, duly filed an application for designation of land as forest land, provided by ORS 321.618(1), for the 1970-1971 assessment year. Three contiguous tax lots comprising 485.15 acres were involved. The

assessor designated 381.15 acres as forest land and denied application of the designation to the remaining 104 acres, divided into five noncontiguous, irregularly shaped pieces of land containing approximately four acres, four acres, eight acres, 32 acres, and 58 acres, respectively. The intervenor appealed to the Department of Revenue pursuant to ORS 306.520, contending that the entire parcel should have been designated as forest land since it is "being held for the predominant purpose of growing and harvesting trees of marketable species," as required in ORS 321.618. In the view of the department, the question turned upon the interpretation of Property Tax Regulation R321.605(3), ¶ 4, which reads:

> "The unsupported statement of an owner that land *is being held* for the predominant purpose of growing and harvesting trees of a marketable species is not sufficient basis for determining that such land is forest land. The land must have growing upon it at least a poor stocking (as determined by standard forestry practice) of established seedlings of a marketable species or, if trees have been harvested from the land and no such stocking is present, the owner must be making such reasonable efforts toward reforestation as are indicated by standard forestry practice."

The department held that the "Petitioner has substantially complied with the requirements of the statutes setting down qualifications for designation." It concludes:

> "Consequently, it is the opinion of the Director that the denial of the designation to certain portions of Petitioner's parcel on the sole basis that it did not have sufficient stocking of trees of a marketable species as required by the regulation, was in error."

Upon appeal to this court, the parties stipulated that the issues should be decided upon the basis of the transcript of testimony before the Department of Revenue's hearing officer, the exhibits offered and accepted by the hearing officer, the post trial memoranda filed with the hearing officer, and oral argument in the Tax Court.

In 1961, The Western Oregon Ad Valorem Timber Tax Law, ORS 321.605 et seq., was enacted. The purposes of the Act were set out in ORS 321.610. The legislature sought "to establish an equitable method of taxing timber, which is subjected to annual taxation, as well as to innumerable other expenses and risks, although it can produce revenue but once in its long life." The historical background of the statute is well described in Bureau of Governmental Research and Service, University of Oregon, *Taxation of Timber and Timberlands in Oregon* (1969). The purposes, as expressed in ORS 321.610, have not been amended.

Significant amendments were made by Or Laws 1967, ch 543. This Act recognized (a) that there is a fundamental requirement imposed upon the assessor, implicit in the appraisal procedure, to determine the true cash value of property at its highest and best use; (b) that the highest and best use of some land is for the production of timber; and (c) that there is other land which may run from excellent to marginal as to timber production but for which there is a "higher and best use" other than timber production. This second category of land is the principal subject of the 1967 amendment.

Prior to 1967, ORS 321.620(3) read:

"(3) The true cash value of forest land shall

be determined under ORS 308.205 [defining true cash value], except that so long as the primary use of the area involved remains forest land it shall be valued as such and noted on the assessment and tax roll as containing forest land potentially subject to increased taxes under subsection (4) of this section."

As amended and subsequently codified as subsection (3) of ORS 321.617, it reads:

"(3) The true cash value of forest land shall be determined under ORS 308.205, except that land which has been designated as forest land under the provisions of ORS 321.617 to 321.621 shall be valued as forest land and not at a value for some higher or better use and shall be noted on the assessment and tax roll as being forest land potentially subject to increased taxes under subsection (1) of ORS 321.621."

Another part of the 1967 amendment is found in ORS 321.618 (see footnote①). This allows an election to the

---

① "(1) An owner of land desiring that it be designated as forest land shall make application to the county assessor on or before April 1 following the assessment date on which the assessment based thereon is first desired, and he may also do so within 20 days of receipt of notice of its assessment as omitted property or notice of an increase in its assessed valuation, or by December 15 of the year of increased assessment if he does not receive such notice.

"(2) The application shall be made upon forms prepared by the Department of Revenue and supplied by the county assessor, and shall include the following:

"(a) A description of all land the applicant desires to be designated as forest land.

"(b) Date of acquisition.

"(c) Whether the land is being held or used for the predominant purpose of growing and harvesting trees of marketable species.

"(d) Whether there is a forest management plan for it.

"(e) If so, whether the plan is being implemented, and the nature and extent of implementation.

owner of land who desires it to be *"designated* as forest land" (emphasis supplied), by application to the assessor for such designation, notwithstanding the assessor's determination of a higher and better use therefor. However, the "designation" does not automatically follow. The application requires an assertion that the land is being held or used "for the predominant purpose of growing and harvesting trees of marketable species" (paragraph (c), subsection (2), ORS 321.618)

"(f) Whether the land is used for grazing.

"(g) Whether the land has been subdivided or a plat has been filed under ORS 92.100.

"(h) Whether a permit has been granted for harvesting for excepted purposes under the Oregon Forest Conservation Act.

"(i) Whether the land is timberland subject to ORS chapter 477, and if it is not, the reasons therefor.

"(j) Whether the land, or any of it, is subject to a lease or option which permits it to be used for any purpose other than the growing and harvesting of trees.

"(k) A summary of past experience and activity of the applicant in growing and harvesting trees.

"(L) A summary of current and continuing activity of the applicant in growing and harvesting trees.

"(m) A statement that the applicant is aware of the potential tax liability involved when the land ceases to be designated as forest land.

"(n) An affirmation that the statements contained therein are true.

"(3) It shall be conclusively presumed that land is not being held or used for the predominant purpose of growing and harvesting trees of marketable species if the application so states or if it is subject to a plat filed under ORS 92.100. Otherwise, the determination shall be made with due regard to all relevant evidence and without any one or more items of evidence necessarily being determinative.

"(4) The application shall be approved by the assessor, and he shall designate the land as forest land, except as to land which he finds is not properly classifiable as forest land. The application shall be deemed to have been approved unless, within three months of the date such application was delivered to the assessor, he shall notify the applicant in writing of the extent to which the application is denied."

and other data important to the assessor in making a determination; in addition, the statute explicitly imposes upon the assessor the duty of making an administrative determination, as follows:

"(3) * * * the determination shall be made with due regard to all relevant evidence and without any one or more items of evidence necessarily being determinative.

"(4) The application shall be approved by the assessor, and he shall designate the land as forest land, except as to land which he finds is not properly classifiable as forest land. * * *"

Thus, the questions presented in the present case are (1) whether the assessor properly exercised his discretion in making a determination that certain acres in the subject property should be excluded from the designation as forest land and (2) whether the defendant can disregard its own duly promulgated regulation or rule requiring "at least a poor stocking" of seedling trees of a marketable species in the factual situation here presented.

It is clear that the assessor has a statutory duty to examine all applications and to disapprove the request for designation as forest land that land (a) which is not being held for the predominant purpose of growing and harvesting trees of marketable species or (b) which is subject to a plat filed under ORS 92.100 or (c) "which he finds is not properly classifiable as forest land." This "determination shall be made with due regard to all relevant evidence" but the impact of the evidence may be cumulative, "without any one or more items of evidence necessarily being determinative." ORS 321.618 (3) and (4).

This is the type of situation where, without the

special statutes governing appeals in tax cases peculiar to the law of the State of Oregon, the taxpayer would use the remedy of mandamus (to compel the assessor to grant the application for designation as forest land). In the case of *Salem Sand & Gravel Co. v. Olcott*, 97 Or 253, 259, 191 P 776 (1920), the court quoted with approval the rule:

> " 'In all matters requiring the exercise of official judgment, or resting in the sound discretion of the person to whom a duty is confided by law, *mandamus* will not lie, either to control the exercise of that discretion, or to determine upon the decision which shall be finally given. * * * the courts will in no manner interfere with the exercise of their discretion, nor attempt by *mandamus* to control or dictate the judgment to be given.' "

Many Oregon cases repeat this principle; e.g., *Ring v. Patterson*, 137 Or 234, 1 P2d 1105 (1931). In *Riesland v. Bailey*, 146 Or 574, 577, 31 P2d 183 (1934), the court said:

> "* * * The question submitted is whether mandamus will lie to inquire into an abuse of discretion by such an official as the county clerk. The general rule, which is well recognized, is that where the performance of an official duty or act involves the exercise of judgment or discretion, the officer cannot ordinarily be controlled with respect to the particular action he will take in the matter; he can only be directed to act, leaving the matter as to what particular action he will take to his determination: 18 R. C. L. 124, § 38. There are important exceptions to the general rule. If there is an arbitrary abuse of discretion, the courts recognize that this is an exception to the general rule and mandamus may issue if there is no other adequate remedy, though the result is that the court is called upon to review the exercise of a discretionary power. It is not accurate to say that the writ will

not issue to control discretion, for it is well settled that it may issue to correct an abuse of discretion, if the case is otherwise proper. The public officer or inferior tribunal may be guilty of so gross an abuse of discretion, or such an evasion of positive duty, as to amount to a virtual refusal to perform the duty enjoined, or to act at all, in contemplation of law. * * *"

The testimony shows that the land excluded from forest land designation by the assessor in this cause was either (a) land incapable of bearing any forest product or (b) land wholly or predominantly bearing nonmarketable species of trees or (c) land which contained less than a poor stocking of established seedlings of a marketable species. The assessor's appraiser testified that the same procedure has been used uniformly in forest land applications throughout the county during the last two years. He was guided by the Department of Revenue's publication, "Timber, Policy" 208.01, 208.15, etc. The evidence is clear that the assessor's office took pains not to exclude from the forest lands natural open spaces of what he deemed to be of minimal size and to include areas with nonmarketable species in which a poor stocking of marketable species (40 to 50 seedlings per acre) was found, thus approving the intervenor's application in areas the assessor considered marginal. His criteria were not shown to be unduly onerous or restrictive. The plaintiff's testimony indicated that some of the excluded area might be suitable for recreational sites.

The intervenor is especially critical of the use by the assessor of the "rule of thumb" used by the county's appraiser (an expert witness with a degree in forestry from the University of California with years of ex-

perience in Oregon), that 40 to 50 seedlings of a marketable species constitute a minimum stocking of the land to qualify it for designation as forest land. However, one of intervenor's witnesses (also a graduate forester), agreed with the appraiser's evaluation of minimal stocking. The county's appraiser testified that his reliance upon it was based in part on advice of the Timber Section of the Department of Revenue.

The Department of Revenue has supervisory power over the assessor and the authority to issue regulations. It has issued a regulation, directed to the assessor and relied upon by the assessor in the present case. R321.605(3) was duly filed in the office of the Secretary of State and promulgated pursuant to ORS 183.020 in December 1967 and revised and repromulgated in February 1968.

The intervenor had no specific forest management plan for the subject property and it testified to a reliance upon natural seeding. There is nothing improper in this, per se, but the excluded areas (other than those on which nonmarketable species were found) could not be expected to develop through natural seeding.

The court recognizes that administrative rules and regulations can go no further than fill. in the interstices of the dominant act. They cannot overcome and override any of its provisions. *Van Ripper v. Liquor Cont. Com.,* 228 Or 581, 365 P2d 109 (1961); *Gouge v. David et al,* 185 Or 437, 464, 202 P2d 489 (1949). See also Parker, *The Contours of Oregon Administrative Law,* 1 Willamette L J 145 (1960). However, it has not been shown here that the regulation exceeds the statute. It seems patent that land not specifically used or

unfit for the growing of trees of a marketable species does not come within the provisions of the Western Oregon Ad Valorem Timber Tax Act. Compare *Kellems v. Dept. of Rev.*, 4 OTR 561 (1971). Rules and regulations, duly established and promulgated, have all the force and effect of law. *Arnold v. Gardiner Hill Timber Co.*, 199 Or 517, 523, 263 P2d 403 (1953). The defendant must obey its own regulations.

In the court's view, the assessor was bound by the regulation, to which is attributed the force of law if within the purview of the statutes, and the Department of Revenue's hearing officer was also bound by it.

The court has given careful consideration to all of the intervenor's arguments and notes its conclusions as follows:

One argument particularly stressed by the intervenor was that the word "tract," found in ORS 321.617, coupled with the language of ORS 321.618(2)(c),[2] indicates a legislative intent that "predominant purpose" is the controlling factor to be considered by the assessor in making a determination on the application. The assessor has not disputed that intervenor's predominant purpose is the growing and harvesting of trees of marketable species upon the subject property. It is the court's view that the word "tract," defined in ORS 321.605(4)(a), has particular reference to the application of a 25 percent or a 30 percent factor referred to in ORS 321.617(2) and has no bearing on the questions before the court. Subsection (4) of ORS 321.618 clearly shows that the legislature contemplated

[2] "Whether the land is being held or used for the predominant purpose of growing and harvesting trees of marketable species."

the possibility of a part of the land being denied the designation as forest land.[9]

Further points were raised by witnesses of the intervenor who testified (a) that forest lands are frequently interspersed with open areas, due to a variety of natural causes, and that such spaces may be important to the timber industry for use as roads, log landings and other needs, (b) that the assessor's classification would require a change of the logging road system in the subject property, (c) that the taxation of these lands imposes a hardship and deterrent to the industry and (d) that the intent of the legislature as manifested by ORS 321.610, requires such open spaces to be treated as forest lands upon application.

In brief answer to these arguments, it must be noted that ORS 308.236 makes special provision for the tax treatment of "timber roads" without reference to ORS 321.605 et seq. Timber lands do have natural openings, to be sure; what is de minimis (under four acres, in the present case) is a proper subject for the assessor's discretion. It must be recognized that the assessor's designation does not constitute a taking of intervenor's property in any degree; the owner can continue to use the designated portions as roads or log landings or even for millsites if it desires to do so. The actual tax involved was $1.73 per acre, an amount insufficient to establish tax hardship, and irrelevant in any event. The court is unable to understand how the assessor's classification would require a change in the logging road system on the subject property and

---

[9] "The application shall be approved by the assessor, and he shall designate the land as forest land, *except* as to land which he finds is not properly classifiable as forest land. * * *" (Emphasis supplied.)

the evidence is insufficient to support the argument. On the other hand, ORS 321.605 et seq., like any other statute creating a special method of taxation, is subject to abuse. There can be no doubt that the assessor was given a duty to make an actual inspection of the land involved in any application for designation as forest land and to prevent the inclusion of land which is incapable of use for the growth and harvest of marketable species of trees, except where the maxim of *de minimis* applies.

At the special request of the parties, the court has reviewed the cases of *Curry Co. Bd. of Equalization v. Com.*, 2 OTR 455 (1966), relating to timber taxation as of the assessment date January 1, 1965, and *Fitzhugh v. Commission*, 3 OTR 129 (1967), relating to timber taxation as of the assessment date January 1, 1964. These cases preceded the effective date of Or Laws 1967, ch 543, and are deemed not to be in point, but the conclusions herein and in those cases are in no way contradictory.

The Order of the Department of Revenue is set aside and the assessor's determination is affirmed.