IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GODZILLA INVESTMENT LLC,            )
                                    )
                Plaintiff,          )    TC-MD 120199D
                                    )
        v.                          )
                                    )
MULTNOMAH COUNTY ASSESSOR,          )
                                    )
                Defendant.          )    **DECISION**

Plaintiff appeals the 2011-12 real market value of property identified as Account

R256130 (subject property).  Steven Anderson (Anderson), Oregon licensed real estate broker,

appeared on behalf of Plaintiff.  Jeff Brown, Oregon registered appraiser, appeared on behalf of

Defendant.  Stephanie McQuown (McQuown), Oregon registered appraiser, testified on behalf of

Defendant.

Plaintiff's Exhibits 1 through 7 and Defendant's Exhibit A were admitted without

objection.  Defendant objected to Plaintiff's Rebuttal Exhibits A-8 and A-9, pages 1 through 3,

but the court admitted them.

## I.  STATEMENT OF FACTS

Anderson testified that the subject property is a 3 bedroom, 2 bathroom, 1,305 square

foot condominium with a one-car garage located in northeast Portland, Oregon in the Rivercliff

Estates Condominium development.  (Ptf's Ex 1; Def's Ex A at 4.)  Both parties discussed the

subject property's listing history, stating that the subject property was "listed for $176,990 back

in May of 2008" and the "price was lowered in August of 2010 to $135,000" when the "bank"

took ownership of the subject property.  (Ptf's Ex 2; Def's Ex A at 4.)  McQuown stated in her

appraisal report that:

"At the time of the January 1, 2011 valuation date, the asking price was $135,000. It was then re-listed in February of 2011 for $114,900, but then immediately reduced again in March of 2011 to $94,900. The subject was then put up for auction and sold for $60,000 in May of 2011."

(Def's Ex A at 4-5.) (Emphasis in original.) Anderson cited prior court decisions discussing the sale of bank owned properties and how those sales can be used to determine real market value. (Ptf's Ex 6 and 7.)

Anderson testified that there were 122 sales of "condos and single family homes" ranging in price between $50,000 and $100,000 that sold during calendar year 2011. (Ptf's Ex 3 at 1-4.) Of those 122 sales, Anderson testified that "79 were bank owned properties." (Ptf's Ex 4.) The average selling price per square foot was $71 for the 122 sales and $72 for the bank owned properties. (Ptf's Ex 3 at 4; Ptf's Ex 4 at 3.) Defendant questioned why Anderson testified that the 122 sales were only sales of "condos and single family homes" when "attached (7)," "floating homes (4)" and "manufactured homes (2)" were included in the listing. (Id.)

McQuown testified that in preparing her appraisal report she inspected the subject property. She testified that she verified that each sale of the properties she selected as comparable to the subject property was a "non-distress, arm's length transaction." Defendant's three comparable properties were adjusted for time, quality, size, second garage and fireplaces. (Def's Ex A at 9-10.) The adjusted sale prices ranged from $99,605 to $118,300. (Id.)

Anderson asked McQuown why she did not include the sale of a property (14830 NE Rose Parkway) located in the same development as the subject property that was 1,299 square feet, listed for 436 days and sold on February 11, 2011, for $71,000. (Ptf's Ex 5.) McQuown responded, stating that she did not remember why she did not include that property among her three comparable properties. Anderson questioned her further asking why she would include a property that was "not a lease hold estate" (comparable #4) when the 1,299 square foot property

is "a lease hold estate" condominium located in the same development as the subject property. The parties agreed that the subject property is built on land that is leased, having a lease expiration date of 2067. McQuown testified that it was "not necessary to have or know the rent for land" in making her appraisal and "the market does not appear to have any significant reaction to this difference [lease hold estate]." (Def's Ex A at 6.)

Anderson submitted a listing for another property (15123 NE Rose Parkway) located in the subject property's same development. (Ptf's Rebuttal Ex A-9 at 2.) He testified that the 1,305 square foot condominium was first listed for sale in December 2008, for $174,000 and the price was reduced a month later to $155,000 and the next month another reduction followed to $140,000. (*Id.* at 1.) Anderson testified that subsequent price reductions have occurred and the property is still listed for sale at $71,000. In response to a question, Anderson testified that he verified the listing with the agent. Anderson testified that the "subject property's value is falling" and there is "no financing available" for this type of property.

## II. ANALYSIS

At issue in this case is the subject property's real market value for the 2011-12 tax year. Real market value is defined in ORS 308.205(1)[1] as:

> "[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007(2). There are three methods of valuation that are used to determine real market value: (1) the cost approach; (2) the sales-comparison or comparable sales approach; and (3) the income approach. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). *See also* OAR 150-308.205-(A)(2)(a) (stating that all

---

[1] References to the Oregon Revised Statutes (ORS) are to the 2011 edition.

three approaches must be considered although all three approaches may not be applicable to the valuation of the subject property).  Because the subject property is a residence and not an income producing property, the income approach is not applicable.  Defendant considered the cost approach, concluding that "[t]he cost approach was not used due to the subject property being a condominium which due to comment (*sic*) elements causes value influencing facts that cannot be developed in a cost approach due to the type of ownership."  (Def's Ex A at 8.)

A.      *Comparable Sales Approach*

In a case such as this, the comparable sales approach may be used to value improved properties.  Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001).  The legislature requires real market value to be determined in all cases by "methods and procedures in accordance with rules adopted by the Department of Revenue."  ORS 308.205(2).  The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that: "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used.  All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Anderson submitted listing information for two properties he identified as comparable to the subject property.  (Ptf's Ex 5; Ptf's Rebuttal Ex A-9 at 2.)  Both properties are located in the subject property's development.  One property is slightly smaller but newer than the subject property that sold close to the assessment date for $71,000.  (Ptf's Ex 5.)  The second property is the same size but newer than the subject property; it was first listed for sale in late 2008 and is still for sale with an offering price of $74,950.  (Ptf's Rebuttal Ex A-9 at 2.)  Plaintiff made no adjustments for size, time or amenities such as fireplace.  In contrast, McQuown selected two properties located in the same development as the subject property.  One property that was sold

close to the assessment date was substantially larger than the subject property with a fireplace and two-car garage. (Def's Ex A at 9.) The second property was the same size as the first property with a fireplace and two-car garage but sold more than five months after the assessment date. (*Id*.) McQuown adjusted the sale price of each property for time, size, condition and amenities. (*Id*.) McQuown's other two properties were not located within the subject property's development and one property was sold as fee simple. The court finds neither of those properties as comparable to the subject property as properties located in the same subject property's development.

Looking at the two properties that sold the closest to the assessment date, the range of value is $107,705 to $71,000. (Ptf's Ex 5; Def's Ex A at 9.) The subject property's real market tax roll value of $82,900 fits within that range. Given the subject property's one-car garage and lack of a fireplace, it is reasonable that the subject property's real market value is at the low end of the range.

B.    *Burden of Proof*

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev*., TC No 4530 at 4 (July 12, 2001) (citing *Feves v. Dept. of Revenue*, 4 OTR 302 (1971)).

Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16

OTR 56, 59 (2002) (citation omitted)).  Competent evidence includes, "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7 (Mar 13, 2012).  Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof.  *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

"In evaluating the competing evidence, the court looks to the comparability of the different sales and the application of all necessary adjustments for differences.  Adjustments are a key component in evaluating properties." *Voronaeff v. Crook County Assessor*, TC-MD No 110361C  at 6 (Apr 25, 2012).  According to *The Appraisal of Real Estate*:

> "Ideally, if all comparable properties are identical to the subject property, no adjustments will be required.  However, this is rarely the case * * *.  After researching and verifying transactional data and selecting the appropriate unit of comparison, the appraiser adjusts for any differences."

Appraisal Institute, *The Appraisal of Real Estate* 307 (13th ed 2008.)

In the case before the court, Plaintiff did not submit an appraisal report.  Even though Plaintiff did not submit an appraisal report, adjusted comparable sales may also be helpful in determining real market value.  Anderson submitted two properties he identified as comparable to the subject property.  (Ptf's Exs 5; Ptf's Rebuttal Ex A-9 at 2.)  Anderson's comparable sales approach was incomplete because the selected properties were not "adjusted to be comparable" to the subject property.  OAR 150-308.205-(A)(2)(c).  Anderson selected properties in the market area, however, the only criteria used in comparing the properties to the subject property were the year built, the neighborhood, and unadjusted sale price.  Anderson failed to adjust the selected comparable properties for size, condition or other distinguishing features.

/ / /

Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed*, 310 Or at 265. Unfortunately, Plaintiff has failed to carry his burden of proof.

Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the value pleaded by the parties." ORS 305.412. As previously stated, the sale data for the comparable properties selected by the parties brackets the current real market tax roll value. The court accepts Defendant's determination that the subject property's real market value as of assessment date was $82,900.

C.      *Purchase Price*

When determining real market value, the sale price of a recent, voluntary, arm's length sale of property between a willing and knowledgeable buyer and seller is also very persuasive of real market value, albeit, not conclusive. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). *See also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 415, 521 P.2d 324 (1974). The two important considerations are whether or not the sale was "recent" and whether it was "arm's length." *Kem*, 267 Or at 114-115.

Plaintiff's purchase at auction closed in May of 2011, making it a fairly recent sale after the assessment date.

In considering a sale, the next issue is whether the sale was an arm's-length transaction. At the time of Plaintiff's purchase, the subject property was a bank owned property. In *Brashnyk v. Lane County Assessor*, TC-MD No 110308 (Dec 12, 2011) this court has discussed the sale of

bank owned properties, stating that "[t]here are narrow exceptions determined on a case-by-case basis to the holding that bank-owned property sales are not typically representative of real market value." *Brashnyk*, TC-MD No 110308 at 5.  Such an exception may be recognized by the court "where the majority of sales are distress, it would seem that that kind of sale would provide a more accurate reflection of the market." *Morrow Co. Grain Growers v. Dept. of Rev.*, 10 OTR 146, 148 (1985).  Bank owned property sales may be considered as comparable sales for the purpose of establishing real market value, "when those bank-owned property sales have been exposed to the open market and meet the 'nominal standards for an acceptable comparable sale.'" *Brashnyk*, TC-MD No 110308 at 9.

This court has made a distinction between the sale of bank owned properties using a multiple listing service and an auction.  In *Schnabel v. Clatsop County Assessor*, TC-MD No 100618D, the court stated that:

> "An auction is defined as a 'sale of property to the highest bidder.' (*Webster's Third Int'l Dictionary* 142 (unabridged ed 2002).)  An auction eliminates the negotiation between the buyer and seller and requires buyers to negotiate with each other, generally leaving the seller out of the negotiation process."

*Schnabel*, TC-MD No 100618D at 4.  An auction sale is not necessarily indicative of real market value and this court gives little consideration to an auction sale.  The court concludes that Plaintiff's auction purchase more than five months after the assessment date is not persuasive evidence of the subject property's real market value as of the assessment date.

### III.  CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof.  The court accepts Defendant's determination of the subject property's real market value.  Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that the 2011-12 real market value of property identified as Account R256130 is $82,900.

Dated this ____ day of August 2012.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on August 13, 2012. The Court filed and entered this document on August 13, 2012.*